## CLEARY *v.* BOLGER.

No. 57.   Argued November 14–15, 1962.—Decided January 14, 1963.

*Irving Malchman* argued the cause for petitioner.   With him on the briefs was *William P. Sirignano.*

*Joseph Aronstein,* by appointment of the Court, *post,* p. 805, argued the cause and filed a brief for respondent.

*John T. Casey* and *Benj. J. Jacobson* filed a brief for the New York State District Attorneys Association, as *amicus curiae.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

This case draws in question the propriety of the issuance of a federal injunction restraining petitioner, a state officer, from giving evidence in a pending state criminal prosecution and a state administrative proceeding.

The facts, as found by the two lower courts, are as follows.   About 8:30 one Saturday morning in September

1959 federal Customs officers observed respondent, a hiring agent and longshoreman licensed by the Waterfront Commission of New York Harbor, enter a deserted pier, carry out a cardboard carton, and place it in a car parked at the pier entrance. The officers, who were concerned about the recent frequency of thefts, particularly of liquor, in the New York waterfront area, followed respondent's car for a short distance and then ordered him to stop. A search of the automobile revealed that the cardboard carton contained only empty soda bottles, but that the glove compartment contained a number of spark plugs and windshield wipers, some of which were stamped "Made in England." Respondent was asked whether he had obtained any liquor from the piers, and he admitted that he had six or eight bottles at home which he had purchased from members of ships' crews who in turn, he said, had bought them from ships' stores.

The agents then took respondent into custody; he was brought to the Customs office, denied permission to use the telephone, and questioned until shortly before 11 a. m. During this period he signed a document consenting to a search of his home by the Customs officers, who had told him that the consent form was unnecessary since they already had enough information to warrant a search but that he might as well sign it to save them trouble. He had at first refused to sign such a consent without consulting a lawyer. The agents then drove respondent to his home in New Jersey and, without a search warrant, gave it a thorough search, which uncovered some 75 bottles of liquor, a Stenorette tape recording machine made in West Germany, and various other items of apparent foreign origin, such as perfumes, linens, costume jewelry, etc. These articles, thought to have been illegally acquired, were brought ·back to Customs headquarters in New York, where, starting about 4 p. m., respondent was again questioned.

By this time the Waterfront Commission, a bi-state agency of New York and New Jersey [1] which worked in close cooperation with the Customs Service in matters of law enforcement on the waterfront, had been informed of respondent's arrest, and two Commission detectives were present when the interrogation resumed. Petitioner Cleary was one of these detectives. After respondent had revealed that he maintained a tool room in the basement of an apartment house in New York, petitioner and a Customs officer accompanied respondent to this tool room, but nothing suspicious was discovered and they returned to Customs headquarters at 5:45 p. m.

After he had been told that he did not have to make a statement, respondent was sworn and interrogated by Customs officers in the presence of a Customs Service reporter, who recorded the questions and answers verbatim. Petitioner was present and could have participated in the questioning, though he did not do so. [2] Respondent admitted that with the exception of a few items that he had purchased from crew members most of the articles seized at his home had been taken by him from piers where he worked. He also said that he had taken the Stenorette tape recorder from a lighter moored at one of the piers. At 7:30 p. m. respondent was released.

No charges were lodged against respondent by the federal authorities. But a month later he was arrested by the New York City police on a charge of grand larceny for the theft of the Stenorette tape recorder, and shortly thereafter the Waterfront Commission temporarily suspended his licenses as hiring agent and longshoreman. The criminal charge was subsequently reduced to petit

---

[1] See *De Veau* v. *Braisted*, 363 U. S. 144.

[2] The other Waterfront Commission detective, Machry, had apparently left the scene at an earlier stage. He was not joined as a defendant in the present action.

larceny and scheduled for trial in the Court of Special Sessions of New York City. A hearing looking to the revocation of respondent's licenses was deferred by the Waterfront Commission pending the outcome of the criminal case.

After the petit larceny charge had been set for trial, respondent instituted the present action in the United States District Court for the Southern District of New York seeking to enjoin the federal Customs officers and petitioner from using in evidence any of the seized property or his incriminating statement, and from testifying with respect thereto, in the state criminal trial or Waterfront Commission proceeding. He also sought return of the seized property.[3] The basis for the action was the claim that the seized property and the incriminating statement were the products of illegal conduct on the part of the federal officers.

The District Court granted such relief, limited however, to the property seized at respondent's home, to the incriminatory statement made following his arrest, and to testimony respecting these matters.[4] It held that the search and seizure at respondent's home violated Rule 41 (a) of the Federal Rules of Criminal Procedure,[5] in that it had

---

[3] Respondent also instituted a second federal action against the Waterfront Commission and its members, seeking to enjoin the use of the same evidence in the license-revocation proceeding. That suit was dismissed by the District Court and is not involved here.

[4] The District Court held that respondent's arrest and the search of his automobile by the federal agents were not illegal, and also denied return of any of the property seized at respondent's home on the premise that it was contraband. Neither of those determinations is before us.

[5] Rule 41 (a): "Authority to Issue Warrant. A search warrant authorized by this rule may be issued by a judge of the United States or of a state, commonwealth or territorial court of record or by a United States commissioner within the district wherein the property sought is located."

been made without a search warrant, and that his incriminating statement had been procured in violation of Rule 5 (a) of those Rules,[6] in that respondent had not been taken before a United States Commissioner within a reasonable time after his arrest, and was also "the result . . . of the illegal search and seizure." In consequence of these illegalities an injunction against the federal officers was thought to follow. An injunction against petitioner was deemed necessary to make the injunction against the federal officials effective. 189 F. Supp. 237. The Court of Appeals affirmed by a divided vote. 293 F. 2d 368. Since the use of federal equity power in the premises presented important questions touching upon federal-state relationships in the realm of state criminal prosecutions, we brought the case here. 368 U. S. 984.

Accepting for present purposes the holdings of the two lower courts with respect to the conduct and enjoinability of the federal officers, we nevertheless conclude that the injunction against this petitioner was improvidently issued.[7]

---

[6] Rule 5 (a): *"Appearance before the Commissioner.* An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith." See *McNabb* v. *United States,* 318 U. S. 332.

[7] It should be noted that respondent did not allege in his complaint that the matter in controversy exceeded the sum or value of $10,000, or that diversity of citizenship existed. See 28 U. S. C. §§ 1331, 1332. Nor did he allege that the District Court had jurisdiction to enjoin petitioner incidental to its supervisory power over federal law enforcement agencies, cf. *Rea* v. *United States,* 350 U. S. 214, 217, or that 28 U. S. C. § 1343 conferred jurisdiction. But, in view of our determination that equitable power should not have been exercised with respect to this petitioner, it is not necessary to resolve the ques-

Courts of equity traditionally have refused, except in rare instances, to enjoin criminal prosecutions. This principle "is impressively reinforced when not merely the relations between coordinate courts but between coordinate political authorities are in issue." *Stefanelli* v. *Minard,* 342 U. S. 117, 120. It has been manifested in numerous decisions of this Court involving a State's enforcement of its criminal law. *E. g., Pugach* v. *Dollinger,* 365 U. S. 458; *Douglas* v. *City of Jeannette,* 319 U. S. 157; *Watson* v. *Buck,* 313 U. S. 387; *Beal* v. *Missouri Pac. R. Co.,* 312 U. S. 45. The considerations that have prompted denial of federal injunctive relief affecting state prosecutions were epitomized in the *Stefanelli* case, in which this Court refused to sanction an injunction against state officials to prevent them from using in a state criminal trial evidence seized by state police in alleged violation of the Fourteenth Amendment:

> "[W]e would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court— all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution." 342 U. S., at 123–124.

tions whether the complaint stated a cause of action as to him or whether federal jurisdiction existed or was adequately invoked. See *Stefanelli* v. *Minard,* 342 U. S. 117, 120.

The two courts below recognized the validity of these considerations but thought that injunctive relief was nonetheless required by *Rea* v. *United States,* 350 U. S. 214. In that case the accused had been indicted in a federal court and had moved for an order under Rule 41 (e) of the Federal Rules of Criminal Procedure suppressing the use in evidence of certain narcotics seized under a search warrant invalid on its face. The District Court granted the motion. Despite the order, however, one of the federal officers who had secured the search warrant caused the accused to be rearrested and charged, in a state court, with possession of the same narcotics in violation of a state statute, and threatened to make the State's case by his testimony based on the evidence seized under the illegal federal warrant. The accused then moved in the Federal District Court to enjoin the federal agent from testifying in the state proceeding. This Court, invoking its "supervisory powers over federal law enforcement agencies" (*id.,* at 216–217), reversed the denial of an injunction and directed that the requested relief be granted in order to prevent frustration of the Federal Rules under which suppression had been ordered.[8] Both lower courts in the present case evidently took *Rea* to mean that federal officers transgressing the Federal Rules of Criminal Procedure may always be enjoined from utilizing their ill-gotten gains in a state criminal prosecution against the victim or from directly or indirectly passing them along to state authorities for such use.[9]

We need not, however, determine in this instance the correctness of the lower courts' broad reading of the *Rea*

---

[8] Rule 41 (e) provides that the material suppressed "shall not be admissible in evidence at any hearing or trial."

[9] The Court of Appeals was also disposed to think that the propriety of the District Court's injunction was not affected by this Court's decision in *Mapp* v. *Ohio,* 367 U. S. 643, which came down after this case had left the District Court.

case, cf. *Wilson* v. *Schnettler*, 365 U. S. 381, on the basis of which the federal officers here were enjoined.[10]  For in any event *Rea* does not support the injunction against this petitioner, a state official.  The Court in *Rea* was at special pains to point out that the federal courts were not there "asked to enjoin state officials nor in any way to interfere with state agencies in enforcement of state law," 350 U. S., at 216, and further that "[n]o injunction is sought against a state official," *id.,* at 217.  The opinion is barren of any suggestion that any inroads on *Stefanelli* were intended.

It is no answer to say, as the Court of Appeals did, that this petitioner "is not being enjoined in his capacity as a state official, but as a witness invited to observe illegal activity by federal agents," 293 F. 2d, at 369.  For it is abundantly clear that the petitioner was present at these occurrences precisely and only because of his official connection with the Waterfront Commission.  The District Court expressly found that it was "[t]he Waterfront Commission," not petitioner, which "had been informed of [respondent] Bolger's detention," 189 F. Supp., at 244, and that petitioner "was present at the questioning [of Bolger] as a representative of the Waterfront Commission," *id.,* at 255.

Nor can the injunctive relief against this petitioner find justification in the rationale that it was required in order to make the injunction against the federal officers effective.  Such relief as to him must stand on its own bottom.  We need not decide whether petitioner's status as a state official might be ignored had it been shown that he had misconducted himself in this affair, that he had been utilized by the federal officials as a means of shielding

---

[10] None of the federal officers involved in this action has sought review in this Court.  And for reasons stated in this opinion there is otherwise no need for determining the propriety of the injunction as to them in order to dispose of the case before us.

their own alleged illegal conduct, or that he had received the evidence in direct violation of a federal court order. Here the District Court found that petitioner was not a factor in the federal investigation [11] and that his presence there was simply "the result of the commendable cooperation between the Customs Service and the Commission who were both concerned with law enforcement on the waterfront." 189 F. Supp., at 255.[12] On this record the upshot of the matter is that, insofar as this state official is concerned, nothing in *Rea* justifies disregard of the teachings of *Stefanelli*. Nor is the vitality of the principles on which the latter case rested sapped by this Court's decision in *Mapp* v. *Ohio,* 367 U. S. 643, overruling *Wolf* v. *Colorado*, 338 U. S. 25, which had refused to extend to the States the exclusionary rule of *Weeks* v. *United States,* 232 U. S. 383. For in denying the injunctive relief there sought *Stefanelli* expressly laid to one side any possible impact of *Wolf.* 342 U. S., at 119–120.

The withholding of injunctive relief against this state official does not deprive respondent of the opportunity for federal correction of any denial of federal constitutional rights in the state proceedings. To the extent that such rights have been violated, cf., *e. g., Mapp* v. *Ohio,*

---

[11] "In the case at bar the wrongful activities were all those of federal officers and were conducted or directed by them. All that was done during the period of unlawful detention, and particularly the taking of the incriminating statement from Bolger, was being done on behalf of the United States. Cleary was merely a witness to them." 189 F. Supp., at 256.

[12] We attach no significance to the District Court's remark that petitioner's "presence might have been an additional inducement to Bolger to answer questions more freely" (189 F. Supp., at 255) because Bolger, when originally picked up by the federal officers, had exhibited concern about the possible effect of his transgressions on his longshoreman's license. The record is barren of any evidence indicating that petitioner was brought into the situation for the purpose of intimidating Bolger or that he in fact did so.

*supra,* he may raise the objection in the state courts and then seek review in this Court of an adverse determination by the New York Court of Appeals. To permit such claims to be litigated collaterally, as is sought here, would in effect frustrate the deep-seated federal policy against piecemeal review.

To the extent that respondent's claims involve infractions merely of the Federal Criminal Rules, we need not decide whether an adverse state determination upon such claims would be reversible here. Cf., *e. g., Gallegos* v. *Nebraska,* 342 U. S. 55. For in any event we do not think that an injunction against this state official is justified in the circumstances of this case. Assuming that such relief was properly granted here as to the federal officials in the exercise of federal-court supervisory power over them, we consider that a supplementing injunction should not issue against a state official, at least where, as here, there is no evidence of a purpose to avoid federal requirements and the information has not been acquired by the state official in violation of a federal court order. Such direct intrusion in state processes does not comport with proper federal-state relationships.

We conclude that the injunction as to this petitioner should not have been granted, and that the judgment of the Court of Appeals must accordingly be

*Reversed.*

MR. JUSTICE GOLDBERG, concurring in the result.

I concur in the result. I cannot, however, join the Court's opinion, because I do not find it necessary in the present circumstances to pass upon the question whether *Rea* v. *United States,* 350 U. S. 214, may ever support an injunction against a state official who has received evidence illegally obtained by federal officers even though "there is no evidence of a purpose to avoid federal re-

quirements and the information has not been acquired by the state official in violation of a federal court order." For me consideration of that question is obviated by the commendably broad reading which the New York Court of Appeals has given this Court's decision in *Mapp* v. *Ohio,* 367 U. S. 643.[1] Because I strongly adhere to the principle, stated with clarity in *Stefanelli* v. *Minard,* 342 U. S. 117, 120, that the considerations governing whether a federal equity court should exercise its power here "touch perhaps the most sensitive source of friction between States and Nation, namely, the active intrusion of the federal courts in the administration of the criminal law for the prosecution of crimes solely within the power of the States," I would avoid granting of injunctive relief in cases such as this where, because there is a substantial likelihood that the state courts will exclude the evidence at issue, such relief is not essential to vindication of an overriding federal policy governing conduct of federal officers. The virtual certainty of exclusion in the New York criminal proceedings and the likelihood of exclusion in the state administrative proceedings satisfy me that denial of the injunction here will not encourage federal officers to engage in illegal conduct. Thus, deterrence of such illegality, the consideration which in substantial part underlay the decision in *Rea,* is not a determining factor here and there is no need to grant injunctive relief to effectuate that policy.

In stating my position I rely on the New York Court of Appeals' announced view that it regards *Mapp* as extending to the "fruit of the poisonous tree," a holding arrived at on facts similar to those involved here. *People* v. *Rodriguez,* 11 N. Y. 2d 279, 286, 183 N. E. 2d 651, 653–

---

[1] See, *e. g., People* v. *Loria,* 10 N. Y. 2d 368, 179 N. E. 2d 478 (1961); *People* v. *O'Neill,* 11 N. Y. 2d 148, 182 N. E. 2d 95 (1962); *People* v. *Rodriguez,* 11 N. Y. 2d 279, 183 N. E. 2d 651 (1962).

654 (1962). It therefore appears that New York will exclude all the evidence here in question in the pending criminal proceedings. With reference to the Waterfront Commission hearing, I am well aware that the New York Court of Appeals has as yet taken no position on the applicability of *Mapp* in civil and administrative proceedings,[2] and that, indeed, the effect of the Fourth Amendment in civil cases in the federal courts is not totally settled.[3] However, in view of the encouragingly constructive approach of the New York courts to application of the *Mapp* decision, and of the "quasi-criminal" character of the pending Waterfront Commission proceedings, I nevertheless take the view, based upon *Stefanelli*, that the orderly way to proceed in this case is for New York to pass upon respondent's claims first.

The Court's opinion states that "To the extent that respondent's claims involve infractions merely of the Federal Criminal Rules, we need not decide whether an adverse state determination upon such claims would be reversible here." I, like the Court, do not reach this issue, but I so conclude because of my stated belief that New York will, under *Mapp*, likely exclude all the evidence in question here, a possibility which for me, because of my firm belief in the principles of *Stefanelli* v. *Minard, supra,* is sufficient to make the granting of injunctive relief here an unwise exercise of federal power. Whether it would be similarly excludible in such state proceedings were respondent's claims premised solely upon federal offi-

---

[2] Compare *Bloodgood* v. *Lynch,* 293 N. Y. 308, 56 N. E. 2d 718 (1944), with *Sackler* v. *Sackler,* 16 App. Div. 2d 423, 229 N. Y. S. 2d 61 (2d Dept. 1962).

[3] Compare *Rogers* v. *United States,* 97 F. 2d 691 (C. A. 1st Cir. 1938), *United States* v. *Butler,* 156 F. 2d 897 (C. A. 10th Cir. 1946), and *United States* v. *Physic,* 175 F. 2d 338 (C. A. 2d Cir. 1949), with *United States* v. *One 1956 Ford Tudor Sedan,* 253 F. 2d 725 (C. A. 4th Cir. 1958).

cers' misbehavior in contravention of the Federal Rules of Criminal Procedure is a question which this Court has not decided.[4]   There is a strong interest, which many decisions of this Court reflect, *e. g., McNabb* v. *United States,* 318 U. S. 332; *Mallory* v. *United States,* 354 U. S. 449, in ensuring compliance by federal officers with rules having the force of federal law, designed to safeguard the rights of citizens charged with criminal acts.   Whether the Supremacy Clause of the Constitution compels state courts to enforce that interest by excluding evidence obtained by federal officers in violation of the Federal Criminal Rules, including reverse "silver platter" situations wherein illegally procured evidence has been handed over to state officers, will warrant serious consideration in an appropriate case.   We need not and therefore do not decide that question here.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE concurs, dissenting.

I would agree with the judgment of the Court if we had here nothing but a question concerning the use of evidence obtained in violation of the Fourth Amendment.   That question can now be raised in the state prosecution as a result of *Mapp* v. *Ohio,* 367 U. S. 643.   My difficulties stem from a flagrant violation by federal officers of Rule 5 (a) of the Federal Rules of Criminal Procedure and the threatened use of the fruits of that violation by a state official in state cases.   If the Court, as is strongly suggested, makes unreviewable here any adverse state determination on that claim, the only opportunity to correct the abuse of federal authority is here and now.

---

[4] Nothing in *Gallegos* v. *Nebraska,* 342 U. S. 55, which did not involve activities of federal officers in violation of the Federal Criminal Rules, decides that question.

Federal customs agents suspected that thefts of liquor were occurring on the New York waterfront. Two agents stopped respondent Bolger on suspicion of theft at about 8 a. m. on Saturday, September 12, 1959. Their search of Bolger's car produced only a couple of windshield wipers and six spark plugs stamped "made in England," items that easily could have been purchased in New York. But, in response to the agents' questioning, Bolger admitted that he had at his home several bottles of liquor purchased from seamen. On the basis of this information the agents arrested Bolger at 9 a. m. Instead of taking him before a Commissioner as required by Rule 5 (a), Federal Rules of Criminal Procedure, they took him to headquarters for further questioning. There, after refusing his request to consult a lawyer and by employing trickery, the agents got Bolger to consent to a search of his home. The ensuing search, conducted at about 11 a. m., produced several items tending to incriminate Bolger. Upon returning to headquarters, further questioning produced damaging statements from him. Petitioner Cleary, an investigator for the Waterfront Commission of New York Harbor, was present at this later questioning at the invitation of the federal agents. Though he did not participate in this questioning, he was free to do so.

No federal prosecution was ever brought against Bolger. New York, however, instituted both a criminal prosecution and an administrative proceeding to revoke his license as a hiring agent. Bolger brought suit in the Federal District Court to enjoin the federal agents and Cleary from producing any of the material seized from him or testifying as to any of his statements in either of the state proceedings.

The District Court granted the relief requested with respect to all statements obtained after 11 a. m., at which time a Federal Commissioner was in his office a few blocks

from headquarters, and also all evidence obtained at Bolger's home. It held that the statements obtained both prior to and after the search were in violation of Rule 5 (a), and that the search and seizure violated both the Fourth Amendment and Rule 41 (a). 189 F. Supp. 237. The District Court relied on *Rea* v. *United States,* 350 U. S. 214, insofar as the federal agents were concerned; and it added that if the remedy did not extend to Cleary, whom it characterized as a "human recorder," federal agents would be free to flout the strictures imposed on them by *Rea* and the Federal Rules. The District Court concluded, "Cleary will be restrained not in his capacity as a state official but because he participated as a witness in the unlawful acts of the federal officers acting on behalf of the United States." 189 F. Supp., at 256.

Only Cleary appealed; and the Court of Appeals affirmed on the authority of *Rea* v. *United States, supra.* 293 F. 2d 368. It said that the only difference between this case and *Rea* "is the time at which the federal officials attempt to make the results of their lawbreaking available to the state." *Id.,* at 369.

I think the Court of Appeals was correct in saying that "the Rea case [is] ample authority for holding that the order appealed from is not barred by 28 U. S. C. § 2283 as an injunction to stay proceedings in a state court." *Id.,* at 370. The proceedings themselves are not enjoined. Enjoining a state agent from offering as a witness unlawfully obtained evidence has no different effect on the "proceedings in a state court" than enjoining a federal officer. To be sure, in *Rea* there had been an earlier suppression order in a federal prosecution; and so it is now said that the injunction against testifying was necessary to protect or effectuate that suppression order. That answer proves too much, for it would enable federal agents themselves to violate the Federal Rules and, without fear of a federal

injunction, produce all their illegally obtained evidence in a state prosecution.

A state agent should be enjoined from producing, as a witness in a state court proceeding, evidence he acquired solely as a result of federal agents' violation of the Federal Rules.

Such an injunction should issue lest federal agents accomplish illegal results by boosting Oliver Twists through windows built too narrow by those Rules for their own ingress.*   It is no answer to say that the state agent was merely a nonparticipating observer, or that Oliver Twist was an innocent child.   The result produced, *viz.*, the Oliver Twist method of obtaining evidence in violation of the Federal Rules, is illegal and should not go unchecked.

"Free and open cooperation between state and federal law enforcement officers is to be commended and encouraged.   Yet that kind of cooperation is hardly promoted by a rule that implicitly invites federal officers . . . [to violate the provisions of the Federal Rules].   If, on the other hand, it is understood that the fruit of . . . unlawful . . . [conduct] by . . . [federal] agents will be inadmissible in a . . . [state] trial, there can be no inducement to subterfuge and evasion with respect to federal-state cooperation in criminal investigation"—to paraphrase an earlier opinion in a related area.   See *Elkins* v.

---

*"It was a little lattice window, about five feet and a half above the ground: at the back of the house: which belonged to a scullery, or small brewing-place, at the end of the passage.   The aperture was so small, that the inmates had probably not thought it worth while to defend it more securely; but it was large enough to admit a boy of Oliver's size, nevertheless.   A very brief exercise of Mr. Sikes's art, sufficed to overcome the fastening of the lattice; and it soon stood wide open also."   Dickens, The Adventures of Oliver Twist (N. Y.: Thomas Y. Crowell & Co.), p. 184.

*United States,* 364 U. S. 206, 221–222.   Unless a federal court can enjoin a state agent under the facts of this case, the provisions of the Federal Rules will be subverted and an unhealthy form of state-federal cooperation will be encouraged.

What is involved is not an attempt by a federal court to interject itself into a state criminal prosecution to protect a defendant's federal rights against state infringement, as was the case in *Pugach* v. *Dollinger,* 365 U. S. 458, and *Stefanelli* v. *Minard,* 342 U. S. 117.   In both of those cases the unlawfully obtained evidence had been obtained by state police.   Here the evidence was obtained by federal agents in violation of the Federal Rules.   It therefore involves no entrenchment on principles of federalism to hold that a Federal District Court may enjoin the production of such evidence in a state proceeding, regardless of who seeks to introduce it.   The federal courts, rather than the state courts, have the responsibility of assuring that federal law-enforcement officers adhere to the procedures prescribed by the Federal Rules. This responsibility cannot be met if the federal courts' power can be thwarted by federal employment of a state Oliver Twist.

Mr. Justice Brennan, with whom The Chief Justice concurs, dissenting.

I join in the dissenting opinion of my Brother Douglas and add a few words in support of his conclusion.

## I.

The Court concedes *arguendo* that it was proper to enjoin the federal officers from testifying in state proceedings against respondent as to the fruits of their violations of Rules 5 and 41 of the Federal Rules of Criminal Procedure.   But having made this concession—compelled, I should think, by *Rea* v. *United States,* 350 U. S.

214 [1]—the Court then excludes petitioner from the injunction: "injunctive relief against this petitioner [cannot] find justification in the rationale that it was required in order to make the injunction against the federal officers effective. Such relief as to him must stand on its own bottom." The Court finds no "bottom," because petitioner did not himself violate the Federal Rules or otherwise misconduct himself. This reasoning, I submit, cannot withstand scrutiny.

In so refusing incidental relief against petitioner, surely the Court flouts settled principles of equity. Equity does not do justice by halves; its remedies are flexible. "A writ of injunction may be said to be a process capable of more modifications than any other in the law; it is so malleable that it may be moulded to suit the various circumstances and occasions presented to a court of equity. It is an instrument in its hands capable of various applications for the purposes of dispensing complete justice between the parties." *Tucker* v. *Carpenter*, 24 Fed. Cas. No. 14217 (Cir. Ct. D. Ark. 1841); see 1 Joyce, Injunctions (1909), § 2; 1 Pomeroy, Equity Jurisprudence (5th ed., Symons, 1941), § 114.[2] "Complete justice" has not been

---

[1] In *Wilson* v. *Schnettler*, 365 U. S. 381, I joined the dissenting opinion of my Brother DOUGLAS because I thought (and still do) that the Court was making dangerous inroads upon the *Rea* decision. Happily, the Court in the instant case makes no suggestion that the authority of *Rea* has been impaired by *Wilson*. At all events *Wilson* is distinguishable from the case at bar, for here there was no failure to allege a violation of federal law and a lack of an adequate remedy at law.

[2] "The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit . . . . Its fundamental principle concerning parties is, that all persons in whose favor or against whom there might be a recovery, however partial, and also all persons who are so interested, although indirectly, in the subject-

done if the fruits of the violations of federal law by federal officers may nevertheless be used against respondent in state proceedings by a state officer who witnessed, indeed abetted, those violations.

The vacation of the injunction against the state officer on the ground that he himself was not a wrongdoer wholly misconceives the nature of equitable relief. Such relief is not punitive but remedial, and it is measured not by the defendant's transgressions but by the plaintiff's needs. Thus, to protect a trade secret, equity will enjoin third persons to whom the secret has been divulged if they have notice of the breach of trust. See, *e. g., Colgate-Palmolive Co.* v. *Carter Products, Inc.,* 230 F. 2d 855, 864–865 (C. A. 4th Cir. 1956). Such third persons are not themselves malefactors, any more than this state officer is; they are enjoined in order to give the victim of the wrong effective protection. The respondent herein is entitled to effective protection against the federal officers' violations of federal law, which comprehends ancillary relief against petitioner *qua* witness to the unlawful conduct. Though innocent of the federal officers' misconduct, the state officer may not avail himself of its fruits to the harm of respondent. I repeat: the Court errs in asserting that the injunction against the state officer must stand on its own bottom; such a supplemental decree is fully justified, in accordance with the conventional principles of equity, by the issuance of an injunction against the federal officers.

---

matter and the relief granted, that their rights or duties might be affected by the decree, although no substantial recovery can be obtained either for or against them, shall be made parties to the suit . . . . The primary object is, that all persons sufficiently interested may be before the court, so that the relief may be properly adjusted among those entitled, the liabilities properly apportioned, and the incidental or consequential claims or interests of all may be fixed, and all may be bound in respect thereto by the single decree." 1 Pomeroy, *supra.*

The incidental nature of the relief granted against the state officer should dispel any fear that such relief threatens impairment of the harmonious workings of federalism. To be sure, it was part of the state officer's official duties to cooperate fully with federal officers. But it was no part of his duty to abet and facilitate federal officers' unlawful conduct. To enjoin him as a witness to such conduct does no more than forbid him to profit from it. In overruling the "silver platter" doctrine a few Terms ago, we anchored our holding in the disruptive effect upon the federal system of allowing the introduction into federal courts of evidence unlawfully seized by state officers. *Elkins* v. *United States,* 364 U. S. 206, 221. Surely the converse situation is no less productive of needless conflict. In truth, to enjoin the introduction into state courts of evidence unlawfully seized by federal officers is to promote, not retard, a healthy federalism.

In invoking the bogey of federal disruption of state criminal processes, the Court relies heavily on *Stefanelli* v. *Minard,* 342 U. S. 117, where it was held to be improper to enjoin the introduction in a state criminal trial of evidence seized by state officers in violation of the Fourteenth Amendment. But *Stefanelli* is manifestly inapt. That decision was compelled by *Wolf* v. *Colorado,* 338 U. S. 25, where the Court, while confirming that the Fourth Amendment had been absorbed into the Due Process Clause of the Fourteenth Amendment, nevertheless left the States free to devise appropriate remedies for violations of this constitutional protection. To have authorized the Federal District Courts to order the exclusion in state criminal trials of evidence unlawfully obtained by state officials would have sanctioned accomplishing indirectly what *Wolf* forbade directly. But *Wolf* has been overruled in this particular, *Mapp* v. *Ohio,* 367 U. S. 643, and the accommodation of *Wolf* which required the decision in *Stefanelli* is no longer a concern.

Moreover, the instant petitioner is not sought to be enjoined as a state officer whose misconduct ought to be remedied by the State, as was the case in *Stefanelli,* but as a witness to the misconduct of federal officers. The Federal Rules are not directed at state officers, nor was this state officer found to have engaged in conduct violative of them. Responsibility for enforcing the Federal Rules lies precisely with the federal courts, whereas under the regime of *Wolf* responsibility for enforcing the Fourteenth Amendment's right of privacy lay exclusively with the state court. Indeed, it is in light of the difference between violations of the Federal Rules and violations of the Fourteenth Amendment that the *Stefanelli* and *Rea* decisions emerge as perfectly consistent; and it is significant that the author of the Court's opinion in *Stefanelli* joined the Court's opinion in *Rea.*

It is also worth observing that Congress has taken pains to specify the conditions under which a federal court shall withhold injunctive relief in respect of a pending state court proceeding. See 28 U. S. C. § 2283. The Court nowhere mentions this provision, surely because its total inapplicability to the case at hand is plain: an injunction against this state officer would not stay the state proceedings against respondent but only preclude the use of certain evidence in them. Since Congress in § 2283 set out specific conditions for withholding federal equity relief, and these conditions have not been met in the case at bar, I submit that we are obligated to allow such relief to be granted in conformity with the accepted usages of equity procedure.

## II.

With all respect I cannot share the view of my Brother GOLDBERG that relief should be denied here because the probable exclusion of the challenged evidence, in whole or part, by the New York courts would sufficiently serve to deter lawless conduct by federal officers. My view is

that equitable actions grounded in violations of the Federal Rules of Criminal Procedure should be governed by the accepted principles of equity. Among them is the principle that an adequate remedy at law bars equitable relief. This principle seems to me to be applicable even where the remedy is given by the state courts, so long as the source of the remedy is federal law. See *Henrietta Mills* v. *Rutherford County,* 281 U. S. 121, 126–127. I further believe that one who has an adequate remedy by way of appeal, as well as one who has a more conventional adequate remedy at law, is thereby disbarred from equitable relief. 1 Joyce, *supra,* § 29. But for a remedy to be adequate, it must have more than a merely theoretical availability. If "a court of law can do as complete justice to the matter in controversy . . . as could be done by a court of equity, equity will not interfere . . . . But in order that the general principle may apply, the sufficiency and completeness of the legal remedy must be certain; if it is doubtful, equity may take cognizance." 1 Pomeroy, *supra,* § 176. How certain, complete, and sufficient is the remedy by way of appeal in the instant case? My Brother GOLDBERG concedes uncertainty as to whether the New York courts, though they have generously interpreted *Mapp* v. *Ohio, supra,* will exclude all the challenged evidence involved in this case, or whether *Mapp* or any other decision of this Court compels such exclusion. Nor is it certain that a State is obliged to exclude evidence which is the product of violations of the Federal Rules—no decision of this Court has yet so held and *Rea* was premised on a contrary assumption, see 350 U. S., at 217; *Wilson* v. *Schnettler, supra,* at 391 (dissenting opinion)—and finally, while petitioner herein was enjoined from testifying in the state administrative proceeding against respondent, as well as in the criminal proceeding, it has not yet been settled whether *Mapp* applies to administrative proceedings.

Thus, to remit respondent to his remedy by appeal in the state courts is to set him adrift on a sea of legal uncertainties, and very possibly to deprive him, in the end, of any remedy whatever. Since respondent's remedy by law is uncertain, conventional equity principles require that the injunction issue against this state officer, premised not on constitutional grounds but on violations of the Federal Rules by federal officers.[3]

---

[3] The Court's intimation, in note 7 of the opinion, of doubt as to the existence of federal jurisdiction in the instant case seems to me totally unwarranted. The Court was unanimous in *Rea* as to the existence of federal jurisdiction; the only dispute was as to the propriety of exercising it. See 350 U. S., at 219 (dissenting opinion). To predicate federal jurisdiction in the instant case, we need not decide whether the Federal Rules are civil rights statutes within the intent of 28 U. S. C. § 1343 (4), nor need we resort to any other jurisdictional statute. For the federal courts have the inherent authority to issue orders to protect their processes, here, as in *Rea*, governed by the Federal Rules of Criminal Procedure. See 350 U. S., at 217; *Wise* v. *Henkel*, 220 U. S. 556, 558.