Rennia **WRIGHT**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 19736.

United States Court of Appeals Ninth Circuit.

Nov. 29, 1965.

A. I. Bernstein, Howard R. Lonergan, Portland, Or., for appellant.

Sidney I. Lezak, U. S. Atty., Michael L. Morehouse, Asst. U. S. Atty., Portland, Or., for appellee.

Before BARNES, MERRILL and BROWNING, Circuit Judges.

BARNES, Circuit Judge.

Appellant appeals from his conviction by a jury on three counts of a twelve count indictment. Three counts against appellant were dismissed—on six he was acquitted. The counts involve three alleged sales, concealments, or sales from an unstamped package of heroin, on May 12, May 19 and June 3, respectively, in the year 1964. (26 U.S.C. § 4704(a) and § 4705(a); 21 U.S.C. § 174.)

Five errors are charged on this appeal:

(1) Failure to grant a new trial.

(2) Failure to suppress evidence: a gun.

(3) Failure to suppress evidence: electronic recordings.

(4) Unfair comment by the trial judge.

(5) Improper conduct by the prosecutor.

The short answer to the second and third points is that neither the gun nor the electronic recordings sought to be suppressed were introduced in evidence against appellant. Hernandez v. United States, 352 F.2d 240 (9th Cir. 1965).

The gun was seized by a city policeman accompanying the United States Marshal who was arresting appellant on a warrant. The gun was held by the Portland, Oregon Police Department, and is

the basis of a state charge. We must, and do assume that the gun, if improperly seized, can and will be suppressed as evidence in the state court action. Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1962).

Appellant asks us to take official notice of the claimed fact the courts of the State of Oregon do not enforce the Constitution of the United States. This we decline to do. If it were true, and the alleged lack of enforcement was established as a fact, then this court, and others, could and would grant relief. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961).

The electronic recordings were admissible, once properly identified, if a proper foundation was laid for them. On Lee v. United States, 343 U.S. 747, 72 S. Ct. 967, 96 L.Ed. 1270 (1952). This proper foundation was here lacking.

The alleged unfair comment relates to the recordings. These had been characterized as "unintelligible." Appellant's counsel urged in his argument that the jury should speculate as to whether the tapes would not have been offered in evidence, had they implicated the appellant, by the government.

The trial judge instructed the jury as appears in the margin.[1] We find no error therein. But more important, the

appellant made no objection to this instruction; and his attorney stated he "was satisfied" with all instructions. (Tr. 228–29.) His point on appeal was thus waived. Sartain v. United States, 303 F.2d 859 (9th Cir. 1962); Young v. United States, 297 F.2d 593 (9th Cir. 1962); Orebo v. United States, 293 F.2d 747 (9th Cir. 1961); Mims v. United States, 254 F.2d 654 (9th Cir. 1958).

The alleged improper conduct of the prosecutor is hardly worth mentioning. The statement: "The Government is vouching for this man", in the sense that the government had called the man as its witness, must be considered in its context. It was invited by and made in answer to appellant's counsel's attack on the witness during argument. The trial judge thought that in its context, this was "fair advocacy" on the government's part. We agree.

The only substantial point urged by appellant is the alleged error in denying appellant's motion for a new trial. It was primarily urged—as "new evidence" —that one Eugene Waters had seen the participants in the alleged narcotics sale at the Fred Meyer underground parking lot on June 3, 1964, and that one of them was a Carlos Vigil, an alleged "pusher."

We accept appellant's version of the facts developed at the motion for new trial,[2] for the purpose of this discussion.

---

1. "Ordinarily, the Court might comment to you upon evidence and express to you some thought the Court might have with reference to the evidence, but if the Court does, you know that it is only advisory to you and you accept it for such advice as you think it is entitled to. The only thought that I wanted to leave with you was this: That you know that there are those recordings and that you have some testimony about them. You have heard one witness say that he thought they were fairly intelligible, and you heard another witness say that they were distorted and were not intelligible. I would just comment to you that you may wonder why they weren't played to you. I don't want you to jump to some supposition, and I only leave this thought with you: That the evidence showed that counsel for the defendant heard them.

I might suggest to you that neither counsel for the Government nor counsel for the defendant, either one of them, thought that they would be at least helpful to you to have them played. I am sure that if either thought they would be helpful, they would have played them to you. So my only thought is don't give any significance to the fact that they weren't played for you. Just accept the evidence for what it is." (Tr. 222, 223)

2. "Waters testified that he had previously purchased narcotics from Atkinson and it had been delivered to him by Carlos Vigil (Supp.Tr. p. 315). Waters had first told defendant about this after seeing something in the paper about defendant asking for a new trial (Supp.Tr. p. 316, 393). He had spoken to defendant before the trial but only told defendant that

Appellant urges this was newly discovered evidence, *or* evidence in the hands of the government (i. e., the informer) not revealed, but suppressed, by the government.

The court found there had been no suppression of evidence by the government, and no due diligence on the part of the defendant in producing the evidence. As the court said, the appellant knew before trial the witness Waters claimed he had seen the transaction; the two had discussed the matter. The court simply did not believe the appellant's story that, knowing of Waters being a witness, he was not called at the trial.

> "I am convinced that this defendant knew everything that Waters knew about it long before the trial. And if I would draw any other conclusion from it, I would be less than intellectually honest." (Tr. 423)

On the other hand, the court apparently believed Carlos Vigil's flat denial he was at the scene of the sale. There were many factual contradictions in Waters' testimony—the positions of the autos in their stalls; the fact that Carlos rode a motorbike (he denied he had ever owned such a bike and asserted he did not know how to ride one, Tr. 333); the fact that

allegations appeared in the affidavit (supporting the motion for new trial) which Waters insisted he had not told appellant until *after* Waters had read in the newspapers of the filing of appellant's motion for a new trial; etc.

As the trial judge said—"Somebody committed perjury." The court believed the testimony of certain witnesses, and not that of Waters.

This was its privilege and right. In doing so, it did not abuse its discretion. The evidence offered is lacking in at least four if not all five of the essentials required for the granting of a new trial.

In order to warrant a new trial on the ground of newly discovered evidence it must appear from the motion: (1) that the evidence relied on is in fact newly discovered; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence must not be merely cumulative or impeaching; (4) must be material; and (5) must be such that on a new trial it would probably produce an acquittal. Pitts v. United States, 263 F. 2d 808 (9th Cir. 1959); Beyda v. United States, 324 F.2d 526 (9th Cir. 1963).

We affirm.

---

Atkinson had attempted to entrap Waters into dealing in narcotics (Supp.Tr. p. 316, 393–405, 395, 420–421).

The government agents testified they had been suspicious of Carlos Vigil because of his association with Atkinson, but had been unable to make a case against him (Supp.Tr. p. 350–352, 379).

The defendant testified he had heard of Atkinson using Carlos, but didn't know him and hadn't seen either Waters or Carlos at the scene, and had first learned of Carlos meeting Atkinson at the Fred Meyer parking lot from Waters after his trial (Supp.Tr. p. 323–324).

The defendant's wife stated she had known Carlos Vigil as a hairdresser and had seen him with Atkinson on a prior occasion but had not seen him at the parking lot (Supp.Tr. p. 328–329).

Carlos Vigil testified for the government and denied he was a narcotics dealer and denied meeting Atkinson on June 3, 1964 at the Fred Meyer parking lot (Supp.Tr. p. 331, 333, 337). He admitted

that when the U. S. Marshal appeared at his place of employment with a subpoena in an erroneous name, he knew it was for him and stayed away from work, but after consulting an attorney returned (Supp. Tr. 337–339).

The two city policemen there didn't know Vigil (Supp.Tr. p. 362). One was so positioned he was unable to see the scene at all (Supp.Tr. p. 386). The other stayed out of sight part of the time because the defendant knew him (Supp.Tr. p. 369). The two government agents knew Vigil but testified they had not seen him there. (Supp.Tr. 349, 373). However, one was not in position to see him at all (Supp.Tr. p. 378). They admitted the possibility of error because they were not expecting Vigil (Supp. Tr. p. 379) and they had erroneously identified defendant's wife as a negro woman, although she was not only white but blonde as well (Supp.Tr. p. 352, 356, 367, 381)." (Appellant's Opening Brief, pp. 5–6).