**David Jesse GRAVES, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 4948.**

United States District Court
E. D. Texas,
Tyler Division.

June 30, 1969.

Weldon Holcomb, Tyler, Tex., for petitioner.

Dunklin Sullivan, Asst. Atty. Gen. of Texas, Austin, Tex., for respondent.

MEMORANDUM OPINION

JUSTICE, District Judge.

Petitioner was convicted of the offense of rape in the District Court of Collin County, Texas, on January 17, 1964, and sentenced to twelve years' confinement in the Texas Department of Corrections. After exhausting all state remedies, petitioner filed an application for the writ of habeas corpus in this court, questioning the constitutionality of his arrest, of an identification lineup in which he was required to participate, and of the taking of a blood sample from him. At the hearing on this mat-

ter, petitioner abandoned the first two of his alleged grounds, and the sole remaining allegation in support of his application is, that the taking of a blood sample from him constituted an illegal search and seizure in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

On the afternoon of June 8, 1963, the petitioner was arrested and confined in Plano, Texas, on a charge of public drunkenness. Shortly before his arrest, an elderly deaf woman had been raped in her home near Plano. Her description of her assailant to the Plano police closely resembled the appearance of petitioner. Blood was found by investigating officers on the bed where the rape occurred. After consulting with a physician who had examined the prosecutrix, the Plano Chief of Police made the decision to have a test performed, to determine petitioner's blood group.

The Chief of Police sought petitioner's voluntary consent to the taking of the blood test. At this time, the petitioner requested that he be permitted to consult with counsel, but this request was refused. The Chief of Police intimated to petitioner that the blood test was to be taken in order to ascertain whether petitioner was intoxicated at the time of the test, that is, whether petitioner had a sufficient quantity of alcohol in his bloodstream to be detained on the charge of public drunkenness. Petitioner consented to the test on this basis. He was not informed that he was the prime suspect in the rape case, nor was he made aware that the blood test was primarily for the purpose of determining his blood group. At the hearing, the Chief of Police testified that he had never caused such a test to be performed in connection with a charge of public drunkenness, as distinguished from a charge of driving while intoxicated, on any prior or subsequent occasion.

The blood grouping test revealed that the petitioner's blood group, a rare type, was the same as that of the rapist. Since the blood group of the prosecutrix was of a common type, proof of the matching blood groups constituted significant evidence against the petitioner at his trial on the indictment for rape.*

In Schmerber v. State of California, 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966), the Supreme Court of the United States stated its views with respect to whether a search warrant is required to perform a blood test on an accused:

> "Search warrants are ordinarily required for searches of dwellings, and *absent an emergency,* no less could be required where intrusions into the human body are concerned." [Italics added.]

▪ No search warrant was obtained to authorize the blood test in question. The Chief of Police testified at the hearing, however, that such a warrant could have been obtained from the local Justice of the Peace, who was readily available. The court takes judicial notice of the fact that human blood groupings are genetic in their character and not subject to change; hence, there could have been no emergency in connection with the obtaining of the blood sample from petitioner.

Normally, petitioner's consent to the blood test would have constituted a waiver of his rights under the Fourth and Fourteenth Amendments. However, in Oipres v. United States, 343 F.2d 95, 97-98 (9th Cir. 1965), where the issue was whether the accused had waived her constitutional immunity from unreasonable search and seizure, it was held:

> "Waiver, in this context, means the 'intentional relinquishment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Such a waiver cannot be conclusively presumed from a verbal expression of assent. The court must determine from all the circumstances whether the verbal assent reflected an understanding, uncoerced,

---

\* Petitioner was never brought to trial on the charge of public drunkenness.

and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld."

In Weed v. United States, 340 F.2d 827, 829 (10th Cir. 1965), this same issue was presented in a situation where the petitioner was in custody at the time he gave his consent to the search and seizure. There, the court said:

"[E]very reasonable presumption is against an accused's waiver of his constitutional rights, particularly when he is in custody, and the consent must be 'specific,' 'unequivocal,' and 'freely and intelligently given.' * * * Particular words of consent must always be weighed in light of the atmosphere and totality of circumstances in which they are spoken in order to determine the intent and voluntariness of the words."

■ Under the circumstances presented here—the petitioner in custody, without counsel, and his acquiescence to the blood test having been obtained by *suppressio veri*—it cannot be said that he intentionally relinquished a known right or that his consent to the test was freely and intelligently given. Therefore, this court holds that the petitioner's consent to the blood test was vitiated. See generally: Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1967); United States v. Como, 340 F.2d 891 (2d Cir. 1965); United States ex rel. Everett v. Murphy, 329 F.2d 68, 70 (2d Cir. 1964), cert. denied, 377 U.S. 967, 84 S.Ct. 1648, 12 L. Ed.2d 737 (1964); Pekar v. United States, 315 F.2d 319, 325 (5th Cir. 1963); Gibson v. United States, 80 U.S. App.D.C. 81, 149 F.2d 381 (1945); Bolger v. United States, 189 F.Supp. 237, 253 (S.D. N.Y. 1960), aff'd *sub nom.*, Bolger v. Cleary, 293 F.2d 368 (2d Cir. 1961), rev'd on other grounds, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963); United States v. Reckis, 119 F.Supp. 687 (D.Mass. 1954).

It follows that the performance of the blood grouping test without a search warrant, and the subsequent use of the results of the test as evidence at petitioner's trial, was illegal and in violation of his constitutional rights. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962); Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Accordingly, an order will be entered granting petitioner's application for the writ of habeas corpus. However, the court will stay entry of the order for a period of thirty days, to enable the State of Texas to appeal or to initiate proceedings to retry petitioner. Counsel will prepare a proper order.