Terrance **RIPLEY**, Plaintiffs,

v.

Keith **STIDD**, City Attorney, City of Minneapolis, Minnesota, and Basil Lutz, Chief of Police, City of Minneapolis, Defendants.

John **HUGHES**, Plaintiff,

v.

Keith **STIDD**, City Attorney, City of Minneapolis, Minnesota, and Basil Lutz, Chief of Police, City of Minneapolis, Minnesota, Defendants.

**Nos. 4–70 Civ. 34, 4–70 Civ. 42.**

United States District Court, D. Minnesota, Fourth Division.

Feb. 6, 1970.

Keith D. Kennedy, Minneapolis, Minn., for plaintiffs.

G. V. Johnson, Asst. City Atty. for City of Minneapolis, for defendants.

NEVILLE, District Judge.

Plaintiffs, clerks in two different bookstores, bring these separate actions in each case seeking thereby and by motions pursuant to orders to show cause for preliminary injunctions, (1) to restrain and enjoin the defendants, the City Attorney and the Chief of Police of the City of Minneapolis, from proceeding with the prosecution of complaints lodged in the Municipal Court of Henne- pin County; (2) the suppression of evidence and the return forthwith of certain seized articles and merchandise; and (3) the convening of a three-judge District Court under 28 U.S.C. § 2281 to hear and pass on the allegations of the complaints.

It appears from the verified complaint in the *Ripley* case and from the written submissions made by the defendants at the oral argument that on the 26th of January, 1970, while plaintiff Ripley was clerking in a bookstore known as "American Book Store", 429 Hennepin Avenue, Minneapolis, four police officers from the City of Minneapolis made a purchase or purchases from the plaintiff of what they deemed and what is now claimed to be pornographic material and immediately thereafter, without any search warrant or warrant for arrest, arrested plaintiff, seized some 10,000 items of printed and photographic material, together with cash in the cash register, and for some period at least locked and closed the store to the public. Subsequently a charge known as a "tab charge" was filed against Ripley in the Hennepin County Municipal Court charging him with a violation of Section 870.080 of the Ordinances of the City of Minneapolis, which Ordinance makes it an offense to exhibit, sell, distribute, etc., obscene material. At the hearing before this court the City Attorney submitted a written complaint which, as the court understands, now has been duly filed and delivered to the plaintiff, charging that the plaintiff "did wilfully, knowingly and unlawfully exhibit and transfer by sale to another, to wit: complainant herein, for a consideration, an obscene and indecent magazine * * *."

The same general occurrences took place in connection with the *Hughes* case on the 28th of January, 1970 at the Economy Bookstore, 419 Hennepin Avenue, Minneapolis. The City Attorney claims however that service of process in the *Hughes* case has not been made on either of the defendants; nor was the court furnished with any proposed written complaint to be filed with the Hen-

nepin County Municipal Court. Both counsel at the hearing on this matter left the court with the distinct impression, however, that if and when proper service is effected, the decision in the *Ripley* case will govern the *Hughes* case. So for the purposes of ruling on the present motions, and without prejudice to defendants' claim of lack of service, the court will treat both cases together and as though properly before the court.

Plaintiffs contend that their constitutional rights are violated under Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Marcus v. Search Warrants of Property, Etc., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), and their profuse progeny in that no adversary hearing was afforded for a judicial determination as to the obscenity of the purchased and seized items prior to the arrests and mass seizure of the allegedly obscene material. Plaintiffs assert that this action by the defendants is in violation of the Civil Rights Act, 42 U.S.C. § 1983 and that this law and 28 U.S.C. §§ 1331, 1343(3) and 2201, give this court jurisdiction.

■ The first question is whether a three-judge District Court should be convened under and pursuant to 28 U.S. C. § 2281 to hear plaintiffs' motions and ultimately to decide the merits of this case. It is this court's opinion that it is not required or necessary to convene a three-judge court. Where the alleged unconstitutionality involves a Municipal ordinance or where the action claimed to have controverted constitutional rights has been taken by Municipal officers acting under a Municipal ordinance, it is well established that a three-judge court is not required. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Ex Parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928); Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967); Pierre v. Jordan, 333 F.2d 951 (9th Cir. 1964), *cert. denied* 379 U.S. 974, 85 S.Ct. 664, 13 L.Ed.2d 565, *rehearing denied* 380 U.

S. 927, 85 S.Ct. 884, 13 L.Ed.2d 814 (1965).

■ The rationale of these cases is that since an ordinance is of local application only a single judge's decision will not be of statewide application and will not paralyze totally a state-wide regulatory or enforcement scheme. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). In this case the challenged ordinance is effective in any event only within the City of Minneapolis and the two public officials sought to be joined are employees of the City of Minneapolis. Plaintiffs' counsel has urged that because the City ordinance uses terminology which is the same as the Minnesota State Statute regarding obscenity a three-judge court should be convened because a decision here may affect the statute. Much this same argument was before the Supreme Court in Moody v. Flowers, *supra* and rejected. The fact however that a three-judge court is not required does not mean that a single judge cannot rule on the constitutionality of an ordinance or action taken thereunder and determine its validity or invalidity.

Before proceeding further it should be noted that the court is not asked in either the *Ripley* or the *Hughes* complaints to enjoin or attempt to enjoin any future action by the Minneapolis Police Department in connection with future or additional arrests or seizures. What the court is asked to do is to enjoin the present defendants from proceeding with the prosecutions already commenced and to suppress not only the seized but the purchased evidence. Whether there is a distinction between the mass of 10,000 items claimed to have been seized and the two items in the *Ripley* case (and perhaps one or some in the *Hughes* case) alleged to have been purchased, the court need not now determine. Nor need the court now decide whether the exhibition of the one or some of the alleged obscene items by the defendants to one of the judges of the Municipal Court prior to issuance of a formal complaint complies with the

teachings of Quantity of Copies of Books v. Kansas, and other cases, although it would seem from a reading of those cases that an adversary hearing must be held with notice to all parties and a chance to present evidence and be heard. Also it is to be observed that neither of the plaintiffs here own or claim to own any of the purchased or seized articles. Further, it is clear that the question of the alleged obscenity of the seized or purchased items is not before the court for decision.

At the oral argument plaintiffs' counsel urged that the Minneapolis ordinance per se is unconstitutional because it is broad, vague and contains no adequate definition and also because it fails to have a section containing the safeguards prescribed in Quantity of Copies of Books v. Kansas, *supra*. This question also is not now before the court.

The most difficult question before the court, assuming *arguendo* that in some way plaintiffs' constitutional rights were violated is whether this court should enjoin the prosecution of the criminal charges now pending in Hennepin County Municipal Court. Plaintiffs have urged two ways in which such could be done: *First,* enjoining the officers together with all their agents and persons acting under them or pursuant to their direction, which procedure if followed very likely effectively would stop the prosecution and, *Second,* ordering all of the evidence in the mass seizure together with the items purchased suppressed and returned to their owner, which procedure would remove all of the evidence from the prosecutor's hands and undoubtedly would render sterile an attempted prosecution.

Plaintiffs' argument is in reality that they fear they cannot or will not get a fair trial in the Municipal Court in the City of Minneapolis. Their counsel presumes that the Municipal Court will not recognize what appear to be the applicable constitutional principles and will ignore the United States Supreme Court's directions set forth in Quantity of Com-

pies of Books v. Kansas, *supra,* and its successor cases. This conclusion the court declines to reach at this time.

■ An ancient equity maxim teaches that a court will not and should not enjoin a criminal proceeding. Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390, (1963); Jensen v. Burnquist, 107 F.Supp. 446 (D.Minn. 1952). In sympathy with this principle Congress adopted 28 U.S.C. § 2283 which as the court reads it prohibits this court even were it inclined to attempt to enjoin a criminal court proceeding in State court from so doing. Section 2283 reads:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

This court is impressed with the language in Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), where the court said:

" * * * If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. * * * " 342 U.S. at 123, 72 S.Ct. at 121–122

In refusing to enjoin the use of allegedly illegally obtained evidence the court went on to state:

"We hold that the federal courts should refuse to intervene in State criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure. The maxim that equity will not enjoin a criminal prosecution summarizes centuries of weighty experience in Anglo-American law.

* * *" 342 U.S. at 120, 72 S.Ct. at 120

The above reasoning was reaffirmed in Cleary v. Bolger, 371 U.S. 392, 397, 83 S.Ct. 385, 388, 9 L.Ed.2d 390 (1963). In *Cleary* the court rejected any contention that its holding would be denying the plaintiffs of any constitutional rights which they may have and stated in part:

"The withholding of injunctive relief against this state official does not deprive respondent of the opportunity for federal correction of any denial of federal constitutional rights in the state proceedings. To the extent that such rights have been violated, cf., e. g., Mapp v. Ohio, supra, he may raise the objection in the state courts and then seek review in this Court of an adverse determination by the New York Court of Appeals. To permit such claims to be litigated collaterally, as is sought here, would in effect frustrate the deep-seated federal policy against piecemeal review." 371 U. S. 400–401, 83 S.Ct. at 390

In reviewing over 25 cases cited by plaintiffs (a number of which appear to be unreported and so could not be reviewed in entirety) claimed to support their request for injunctive relief, this court finds little basis for the granting of such request. The majority of such cases involved the question as to whether an adversary hearing is essential before any seizure can take place or result in enjoining in certain instances future prosecutions under the applicable obscenity statute. This court observed that in two of the District Court cases cited the respective courts did enjoin a pending criminal prosecution but appeared to do so without considering the dictates of the United States Supreme Court in *Cleary, supra,* and Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In this latter case the Supreme Court expressly noted the distinction between enjoining future prosecutions or enjoining pending prosecutions. In Footnote 2, the Court, in citing 28 U.S.C. § 2283 stated that a Federal District Court does not have the power to enjoin State Court proceedings already instituted.

Plaintiffs in urging this court to enjoin the present state court proceedings have alleged that 42 U.S.C. § 1983, the Civil Rights Act, creates a statutory exception to 28 U.S.C. § 2283, hereinabove quoted, for the enforcement of First Amendment rights. The United States Supreme Court has specifically declined to settle this question in both *Stefanelli* and *Dombrowski.* However Justice Frankfurter, in what may be characterized as *dicta,* stated in *Stefanelli* in part:

" * * * [E]ven if the power to grant the relief here sought may fairly and constitutionally be derived from the generality of language of the Civil Rights Act, to sustain the claim would disregard the power of courts of equity to exercise discretion when, in a matter of equity jurisdiction, the balance is against the wisdom of using their power. Here the considerations governing that discretion touch perhaps the most sensitive source of friction between States and Nation, namely, the active intrusion of the federal courts in the administration of the criminal law for the prosecution of crimes solely within the power of the States." 342 U.S. at 120, 72 S.Ct. at 120

The Fourth Circuit Court of Appeals in Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964), provides an exhaustive analysis of the effect which the Civil Rights Act may have on 28 U.S.C. § 2283. The Circuit Court in its analysis noted the Supreme Court's dictate in Amalgamated Clothing Workers of America v. Richman Bros., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955), which in essence was that Congress has made clear that the prohibition of Section 2283 "is not to be whittled away by judicial improvisation." 348 U.S. at 514, 75 S.Ct. at 454. The court concluded in *Baines* that:

" * * * If judicial principles of equity and comity prevent federal stay

of criminal proceedings in a state court, it is difficult to see how an unqualified congressional command to the same end can be ignored." 337 F.2d at 591.

In conclusion and for the reasons above stated, this court denies plaintiffs' request for a temporary injunction and discharges the orders to show cause in each case.

A separate order has been entered.