Oliver D. LYLE, Plaintiff,

v.

The VILLAGE OF GOLDEN VALLEY, Cliff Teresi, Mayor, John L. Bies, Roger S. Carlson, Gordon O. Garis, Ray B. Stockman, Councilmen, Everett Frandsen, Chief of Police, David Niebur, Ronald Pavlock, John Doe, a police officer of the Village of Golden Valley, and XYZ Towing Service, whose correct name is unknown, Defendants.

No. 4–69–Civ. 306.

United States District Court, D. Minnesota, Fourth Division.

March 6, 1970.

toms, usages and the authority of their offices, violated the plaintiff's civil rights by means of unlawful searches, unlawful arrests, assaults, invasion of privacy, slander and libel, abuses of process, malicious prosecution, harassment and coercion. These actions were allegedly committed with the knowledge and consent of the officers of the Village who with the Village are claimed to be a part of a conspiracy with the defendant towing company unlawfully to take the property of the plaintiff.

The plaintiff seeks an order restraining defendants from prosecuting certain traffic charges against him pending in the Hennepin County Municipal Court and in addition prays for damages in the amount of $50,000. Jurisdiction of this court rests on 28 U.S.C. § 1331 and 1343. The defendant Village of Golden Valley now moves to dismiss the action as to it on the ground that the plaintiff's complaint fails to invoke any statute which confers rights upon the plaintiff against a municipal corporation, and asserts that the court is thus without subject matter jurisdiction over the defendant Village.

■ This court has previously entered an order in this case to the effect that it will not enjoin the pending proceedings before the Municipal Court of Hennepin County. The court does not believe it should change its position now. As stated in 28 U.S.C. § 2283:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The United States Supreme Court has noted that a court should not and will not enjoin a criminal proceeding. Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963). This court recently was faced with a somewhat analogous situation where it was asked to enjoin the prosecution of complaints for sale of alleged pornographic material

William Merlin and LaMar Thomas Piper, Minneapolis, Minn., for plaintiff.

Best, Flanagan, Lewis, Simonet & Bellows, by Harold C. Evarts and Allen D. Barnard, Minneapolis, Minn., for defendants.

NEVILLE, District Judge.

Plaintiff Oliver D. Lyle, a Negro, has instituted suit against the Village of Golden Valley, Minnesota, its mayor, councilmen, police chief, certain police officers and an automobile towing company whose correct name is unknown, asserting rights under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 the Civil Rights Act of 1871 and under 42 U.S.C. §§ 2000a–1, 2000a–2, 2000a–3, 2000b–2 and 2000h–2, portions of the Civil Rights Act of 1964, and under the United States Constitution, particularly the 8th and 14th amendments. Specifically he alleges that certain defendant police officers under the color and pretense of statutes, ordinances, regulations, cus-

lodged in the Hennepin County Municipal Court. See Ripley v. Stidd, 308 F. Supp. 854 (D.Minn. 2/6/70). This court in that case refused to enjoin criminal proceedings pending in State court following the doctrine of abstention.

■■ The present action then comes down to being one for damages under the Civil Rights Act and under the United States Constitution. As to the pending motion it is necessary only to consider whether any of the Acts or Amendments cited by the plaintiff give him the remedy of damages against a municipal corporation. It is clear that those sections cited by the plaintiff which form part of the Civil Rights Act of 1871 do not confer a right of action against a municipal corporation. The Supreme Court in the case of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), discussed the legislative history of certain provisions of the act and then noted:

"The response of the Congress to the proposal to make municipalities liable for certain actions being brought within federal purview by the Act of April 20, 1871, was so antagonistic that we cannot believe that the word 'person' was used in this particular Act to include them. Accordingly we hold that the motion to dismiss the complaint against the City of Chicago was properly granted." 365 U.S. at 191–192, 81 S.Ct. at 486.

This court previously considered the precise question in Daly v. Pedersen, 278 F.Supp. 88 (D.Minn.1967) and noted:

"the rule is well established that under the Civil Rights Act, 42 U.S.C. §§ 1981–1986, a claim does not lie against a municipal corporation." 278 F.Supp. at 91

The plaintiff concedes that there are cases holding that no rights are conferred against a municipal corporation under Title 42, U.S.C. §§ 1981–1988, but urges that there are no such decisions under the Civil Rights Act of 1964. Initially it may be said that Sections 2000b–2 and 2000h–2 are irrelevant here. The former section provides that the Attorney General may initiate a civil proceeding and that such will not affect adversely the rights of any individual to sue for or obtain relief against discrimination in any public facility covered by the subchapter. It does not give a remedy but merely states that no remedy shall be taken away. The latter permits the attorney general to intervene in a litigation where a plaintiff is seeking redress for Fourteenth Amendment wrongs.

It is to be noted that the applicable provisions of Subchapter II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a through 2000a–6, use the word "person" as did its 1871 predecessor. Section 2000a–2 states that "No person shall * * *"; Section 2000a–3 then states "Whenever any person has * * *". Congress was well aware of the interpretation the courts had given the word "person" in the earlier civil rights legislation of 1871, at the time the 1964 legislation was being drafted and passed by Congress. It is reasonable to assume that if Congress had intended those whose discriminatory actions are proscribed to encompass a different or larger class than the 1871 Act such as municipalities, it would have used different language or terms to so describe and to include municipalities.

■ It is not necessary to rule on that question however for it appears that Subchapter II is in any event irrelevant to the present suit. Section 2000a–3 is the section which gives the private remedy for illegal action under this Subchapter. The section gives only the right to injunctive relief. The court notes that the House Report of the Act, U. S. Code Congressional and Administrative News 1964, p. 2355 at p. 2391 called it a "bill * * * to confer jurisdiction upon the district courts of the United States to provide injunctive relief against discrimination in public accommodations * * *". In the sectional analysis of the act it is stated:

"Title II would prohibit discrimination on grounds of race, color, reli-

gion, or national origin in specified places of public accommodation (sec. 201). Included are hotels and motels, theaters and other places of amusement presenting sources of entertainment which move in interstate commerce, and restaurants, lunch counters, and gasoline stations which sell food or goods which move in commerce or which serve interstate travelers (sec. 201(b) and (c)). It also outlaws discrimination in such establishments if discrimination therein is supported by State action (sec. 201(d)).

*The prohibitions of title II would be enforced only by civil suits for an injunction* (sec. 204(a)). *Neither criminal penalties nor the recovery of damages would be involved."* at 2395 [Emphasis added.]

Since the present suit is one for damages it would seem that Subchapter II of the Civil Rights Act of 1964 is inapposite. Also and in passing it is to be observed that public highways are not one of the places of public accommodation enumerated in Section 2000a.

■ Sections 1331 and 1343 of Title 28 U.S.C., cited in the plaintiff's complaint confer jurisdiction on the United States District Courts to hear certain causes of action, i.e., questions arising under the Constitution, laws and treaties of the United States and questions concerning deprivation or protection of civil rights. These sections do not in themselves create any rights but merely give the district court power to hear the causes and act when rights are asserted under other provisions.

■■ The plaintiff asserts, however, that the Fourteenth Amendment standing alone and without any enabling act of Congress gives him the right to damages for the alleged deprivations in the case at bar. The Fourteenth Amendment provides:

"* * * No State shall * * * deprive any person of life, liberty, or property, without due process of law;

nor deny to any person within its jurisdiction the equal protection of the laws."

Section 5 of the Fourteenth Amendment reads:

"The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

The Amendment is phrased in words of prohibitions but certain positive rights and immunities are created by it. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880). Plaintiff confuses the difference between a right and a remedy. The amendment may create certain rights but it provides no specific remedy. Instead the amendment under Section 5 leaves to Congress the power to provide positive remedies, i.e., to do what is necessary and proper to permit enforcement of the amendment. The cases cited by the plaintiff which rely *solely* on the Fourteenth Amendment do not give the parties before them relief in the form of damages. In fact in plaintiff's cited cases where the relief sought was other than an injunction against the prohibited act of the State there was an express statute present which specifically allowed the relief requested. Limiting relief to the grant of an injunction on the basis of and on the sole authority of the Fourteenth Amendment would be consistent with the statement that "No State shall * * *". If a state does make an enactment which is violative of the amendment it is null and void and therefore action should be enjoined rather than an award of damages made. So in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), relied on so heavily by plaintiff involving school desegregation the relief granted was injunctive—not damages.

Courts have been quick to recognize that the Fourteenth Amendment standing alone falls short of authorizing full remedial action. As stated by the court in Katzenbach v. Morgan, 384 U.S. 641, 648, 86 S.Ct. 1717, 1722, 16 L.Ed.2d 828 (1966), quoting Ex parte Commonwealth

of Virginia, 100 U.S. 339, 25 L.Ed. 676 (1880):

> " 'It is the power of Congress which has been enlarged. Congress is authorized to *enforce* the prohibitions by appropriate legislation. Some legislation is contemplated to make the amendments fully effective.' "

The court in the *Virginia* case further said:

> "All of the Amendments derive much of their force from this latter provision. [the 5th section of the 14th.] It is not said the judicial power of the General Government shall extent to enforcing the prohibitions and to protecting the rights and immunities guarantied. It is not said that branch of the government shall be authorized to declare void any action of a State in violation of the prohibitions. It is the power of Congress which has been enlarged. * * *" 100 U.S. at 345.

And in United States v. Cruikshank, 1 Woods 308, Fed.Cas. No. 14,897 (1874):

> "On the other hand, when the provision is violated by the passage of an obnoxious law, such law is clearly void, and all acts done under it will be trespasses. The legislation required from congress, therefore, is such as will provide a preventive or compensatory remedy or due punishment for such trespasses; * * *."

Further, in Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), the court noted, referring to the first clause of the Fourteenth Amendment:

> " * * * It nullifies and makes void all state legislation, and state action of every kind, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty, or property without due process of law, or which denies to any of them the equal protection of the laws. It not only does this, but, in order that the national will, thus declared, may not be a mere *brutum fulmen*, the last section of the amendment invests congress with power to enforce it by appropriate legislation. To enforce what? To enforce the prohibition. * * *" 109 U.S. at 11, 3 S.Ct. at 21.

And in Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880):

> " * * * and by it [the 14th Amendment] such laws were forbidden. If, however, the States did not conform their laws to its requirements, then, by the 5th section of the article of amendment, Congress was authorized to enforce it by suitable legislation.' " 100 U.S. at 307.

These early cases seem to place limits on the amendment standing alone and these limitations have never been enlarged to include damages.

This view renders unnecessary the consideration of defendants' arguments that a municipality has a sovereign immunity and that Minn.Stat. § 466.02 making a municipality liable for its torts does not render it liable for an alleged violation of federal rights.

In the absence of any statutory provision giving plaintiff a cause of action for damages against a municipal corporation, the defendant Village of Golden Valley must be dismissed out of the suit. A separate order has been entered. The court does not envision, unless a showing can be made to the contrary, that the dismissal of this suit as to the Village of Golden Valley will in any way affect or modify this court's order of November 12, 1969 relating to discovery and subpoenas.