Victor **DORAK**, on behalf of himself and all others similarly situated,
Plaintiff,

v.

Milton **SHAPP**, Individually and in his official capacity as Governor of the Commonwealth of Pennsylvania, et al.,
Defendants.

Civ. No. 75–345.

United States District Court,
M. D. Pennsylvania.

Nov. 14, 1975.

O. Randolph Bragg, Harrisburg, Pa., for plaintiff.

Robert P. Kane, Atty. Gen., Lawrence Silver, Norma P. D'Apolito, Deputy Attys. Gen., Commonwealth of Pa., for defendants.

## MEMORANDUM AND ORDER

HERMAN, District Judge.

In this action [1] seeking declaratory and injunctive relief under the Civil Rights Act of 1871 (42 U.S.C. § 1983), within the jurisdiction of the district court, 28 U.S.C. § 1343(3) and (4), on the ground that both the structure and administration of Pennsylvania's State Plan for Programs on Aging are inconsistent with the Older Americans Act (42 U.S.C. § 3001 et seq.) and the regulations of the Department of Health, Education and Welfare, 45 C.F.R. §§ 903.34 and 903.50 (c), the defendants Milton Shapp, et al., have moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b) and 15(a) on several grounds which are discussed below.

Because we decide that the plaintiff has failed to state a claim upon which relief can be granted, we find it unnecessary to discuss the issue of plaintiff's standing to raise such claims under the Civil Rights Act of 1871 or of his class application.

■ Preliminarily we find that the court obtains jurisdiction over the subject matter of such a case solely by reason of § 1983 and its jurisdictional counterpart, § 1343(4).[2] Section 1343(3) of Title 28 U.S.C., cited in the plaintiff's complaint confers jurisdiction on the United States District Courts to hear certain causes of action; i. e., questions arising under an Act of Congress where a federal right is being asserted that provides "for *equal rights* of citizens. . . ."[3] This section does not in itself create any rights but merely gives the district court power to hear the causes and act when rights are asserted under other provisions. *Henderson v. Defense Contract Admin. Serv. Reg.*, N.Y., 370 F.Supp. 180 (S.D.N.Y.1973); *Blaze v. Moon*, 315 F.Supp. 495 (S.D.Tex. 1970); *Lyle v. Village of Golden Valley*, 310 F.Supp. 852 (D.Minn.1970).

■■ It is the current majority view too, that § 1983 is not itself an act for the protection of equal rights. *See, Young v. Harder*, 361 F.Supp. 64, 72 (D.Kan. 1973); *Mattingly v. Elias*, 325 F.Supp. 1374, 1383 (E.D.Pa.1971), remanded on other grounds, 482 F.2d 526 (3d Cir. 1973). Nor do we believe that the organizational sections of the Older Americans Act provide for the "protection of *equal rights*" as specified in § 1343(3). Therefore, jurisdiction before the court in the present case cannot be predicated on § 1343(3).

■ On the other hand, § 1343(4) is a jurisdictional grant to district courts

---

1. Plaintiff asks to have this matter certified as a class action under Rule 23 Fed.R.Civ.P.

2. The statute (§ 1983) provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The jurisdictional counterpart of this section, 28 U.S.C. § 1343(3) and (4), states in relevant part: "The district court shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, or any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil indicated.

rights, including the right to vote."

3. Emphasis herein supplied unless otherwise indicated.

pursuant to acts of Congress which provide for the protection of *civil rights,* including the right to vote, and "[I]t is clear that 42 U.S.C. § 1983 is an 'Act of Congress providing for the protection of civil rights' under 28 U.S.C. § 1343(4). *York v. Story,* 324 F.2d 450 (9th Cir. 1963). *See, Rosado v. Wyman,* 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Jackson v. Bishop,* 404 F.2d 571, 573 (8th Cir. 1968)." *McClellan v. University Heights, Inc.,* 338 F.Supp. 374, 380 (D.R.I.1972). *But see, Mattingly v. Elias,* 325 F.Supp. 1374, 1383 (E.D. Pa.1971), remanded on other grounds, 482 F.2d 526 (3d Cir. 1973).

■■■ However, the complaint does not indicate the denial or deprivation of a federal "civil right" which would be sufficient to support jurisdiction under § 1983 and § 1343(4). The rights protected by § 1983 are public ones, created or adopted by the Federal Constitution or by Congress. These federal rights entail a person's civil rights and personal liberties, including nondiscrimination, voting, free speech and freedom of assembly, equal protection and due process in safeguarding proprietary rights, as well as personal liberties. *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). These federal rights are therefore publicly created but subject to private vindication. Section 1983 prescribes two elements as requisite for recovery: "(1) the conduct complained of must have been done by some person acting under color of law; and (2) such conduct must have subjected the complainant to the deprivation of rights, privileges, or immunities secured to him by the Constitution and laws of the United States. . . ." *Basista v. Weir,* 340 F.2d 74, 79 (3d Cir. 1965). Clearly the State Plan for Programs on Aging is the product and device of state action; thus to state a good cause of action in the present case the complaint must allege facts showing that the structure and administration of the State Plan denied plaintiff a right given by the Federal Constitution or acts of Congress.

Plaintiffs rely on the criteria set forth in Title III, § 3025 of the Older Americans Act and the related regulations, 45 C.F.R. §§ 903.34 and 903.50(c),[4] in their contention that the structure and authority of the Pennsylvania Office for the Aging and the composition of members of the Advisory Committee on Aging provided for in the State Plan do not comply with such criteria and therefore violate plaintiff's federal right to proper representation on the Advisory Committee and effective implementation and adminis-

---

4. Section 903.34 of 45 C.F.R. provides that:
   "The State plan shall provide that there will be a single organizational unit within the State agency designated in accordance with § 903.13, with delegated authority for, and whose principal responsibilities shall be, Statewide planning, coordination, administration, and evaluation of programs and activities related to the purposes of the Act, including all other functions prescribed for such agency in this part. The unit shall be identified in the State plan. If the State agency is an independent single purpose agency, it may in its entirety constitute the single unit. In all other cases, the single organizational unit must be placed at an organizational level within the State agency to assure effective performance of all the responsibilities of the unit prescribed in this part. In establishing an organizational structure for the unit, including determination of the need for a State regional structure for the unit, due consideration shall be given to the geography of the State, the number and concentration of older persons, and other special conditions in the State."
   Section 903.50(c) further provides that:
   "(c) The State plan shall provide for the establishment of an advisory committee to the Governor, the State agency, and the single organizational unit on the implementation of the State plan. At least one-half of the membership of the committee shall consist of actual consumers of services under this program, including low income, and minority older persons, at least in proportion to the number of minority older persons in the State, with the remainder being broadly representative of the major public and private agencies and organizations in the State who are experienced in or have demonstrated particular interest in the specific needs of the elderly. This committee shall meet preferably bi-monthly, but at least quarterly."

tration of the State Plan. Title III of the Act provides for a series of annual welfare fund appropriations directly to the states which then administer the ultimate distribution of the funds. Prerequisite to any appropriation to a state and implementation of the plan, however, is a formal approval by the Secretary of the plan for the administration of the agency as submitted by the state upon a finding that it complies with governing federal regulations. Section 3025 expressly authorizes the Secretary to approve any state plan which he finds *meets the criteria* established for such state plan, or to disapprove, modify or deny a state plan after affording the state reasonable notice and opportunity for a hearing. 42 U.S.C. § 3025(b), (c) and (d).[5] Included in the criteria which must be met are § 903.34 of 45 C.F.R., providing for the organizational structure of the state agency, and § 903.50(c) of 45 C.F.R., establishing standards for representation of various classes of persons on the Advisory Committee created to oversee effectuation of the plan.

▆ Plaintiff has stated no basis upon which this court would have authority at this time to decide his claims and determine whether or not the Pennsylvania State Plan comports with established federal standards. Plaintiff has not yet suffered harm nor is there imminent threat of deprivation of any rights by reason of the fact that the Secretary has not yet approved the State Plan as it is presently organized nor has the Secretary in any way asserted that the plan complies with the statutory standards. Until such action is taken by the Secretary, if indeed that is his decision, no violation of plaintiff's asserted "federal rights" arises and his action is premature.

Federal courts have had to deal with similar problems involving review of state urban renewal plans prepared pursuant to regulations prescribed by the Housing and Home Finance Agency under the Federal Housing Act of 1949, 42 U.S.C. §§ 1450–65, governing the distribution of federal funds for local urban redevelopment plans. Within the context of urban renewal projects organized by states or municipalities, the courts have *not* undertaken judicial review of such plans *prior* to exercise of the power of eminent domain or other administrative agency action.

In *Green Street Assoc. v. Daley*, 373 F.2d 1 (7th Cir. 1967), the circuit court reiterated the rule stated in the *Harrison-Halsted* case in declining to review the details of a particular plan for urban renewal proposed by the City of Chicago or its conformity with the provisions of the Housing Act of 1949 and its related regulations prior to the actual exercise of the power of eminent domain. In *Harrison-Halsted Community Group, Inc. v. Housing and Home Finance Agency*, 310 F.2d 99 (7th Cir. 1962), the same court had held that the plaintiffs have no right to judicial review of a plan of public use redevelopment. The court found that the legislature, through its lawfully created agen-

---

5. The pertinent subsections of 42 U.S.C. § 3025 provide:

"(b) the Commissioner shall approve any State plan which he finds fulfills the requirements of subsection (a) of this section.

"(c) the Commissioner shall not make a final determination disapproving any State plan, or any modification thereof, or make a final determination that a State is ineligible under Section 3024 of this title, without first affording the State reasonable notice and opportunity for a hearing.

"(d) whenever the Commissioner, after reasonable notice and opportunity for a hearing to the State agency, finds that—

"(1) the State is not eligible under section 3024 of this title,

"(2) the State plan has been so changed that it no longer complies with the provisions of subsection (a) of this section, or

"(3) in the administration of the plan there is a failure to comply substantially with any such provision of subsection (a) of this section, the Commissioner shall notify such State agency that no further payments from its allotments under section 3023 and section 3026 of this title will be made to the State . . . until he is satisfied that there will no longer be any failure to comply. . . . ."

cies, rather than "interested" citizens or the judiciary, is the main guardian of the public needs to be served by social legislation where the states legislate concerning local affairs: "[W]e do not sit to determine whether a particular housing project is or is not desirable." *Id.*, at 105. *See, Berman et al. v. Parker, et al.*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). The circuit court held in both cases that plaintiffs' personal legal rights could only have been infringed by an improper judgment in a condemnation proceeding in the state courts, and therefore their challenges to the urban renewal plans were properly matters for such proceedings even though violations of federally guaranteed rights were claimed. The power of eminent domain is subject to prior scrutiny of the federal courts only in the exceptional cases where the facts alleged indicate to all outward appearances that the taking pursuant to the redevelopment plan is designed solely to deny constitutional rights. *Green Street Assoc. v. Daley*, 373 F.2d, at 7; *see, Progress Dev. Corp. v. Mitchell*, 286 F.2d 222 (7th Cir. 1961).

The Second Circuit recognized possible problems with the justiciability of issues arising from local urban renewal planning in its decision in *Norwalk C. O. R. E. v. Norwalk Redevelopment Agency*, 395 F.2d 920 (2d Cir. 1968), noting that the necessity of discretionary decision making in urban renewal planning would render many questions concerning urban renewal unfit for judicial decision. The court, however, found the concern as to the want of justiciability of a challenge to the basic validity of an urban renewal plan expressed in *Green Street* inapplicable to the case before it solely by reason of the fact that the plaintiffs in their case presented an equal protection of the laws question concerning the planning and implementation of a relocation program in connection with the urban renewal program. "We need not consider the *political question* of the adequacy of the standard [the standard for relocation as set by the legislative and executive branches of the government] to conclude . . . that proof of these allegations [that the standard was less sufficiently met in the relocation of Negroes and Puerto Ricans than in the relocation of whites] would make out a case of violation of the equal protection clause . . . ." *Norwalk C. O. R. E. v. Norwalk Redevelopment Agency*, *supra*, at 929.

In *Golden Dawn Shops, Inc. v. Dept. of Housing & Urban Dev.*, 333 F.Supp. 874 (E.D.Pa.1971), the plaintiffs alleged that the state redevelopment authority had failed to comply with stated criteria in federal statutes requiring that the state redevelopment agency establish various programs to aid in the relocation of displaced persons and businesses and that by implementation of the relocation procedures the agency had denied equal protection to businesses displaced by the project, and further that project goals developed by the state agency failed to satisfy criteria established by HUD for determining priority consideration. The court considered all three allegations and its consideration of the latter contention indicates it may have engaged in a review of the efficacy and adequacy of actual planning decisions similar to that requested in the present case. However, it is unstated in the factual context of the *Golden Dawn* case whether or not HUD had already "approved" the redevelopment project or otherwise agreed to finance the project. And it is possible that the court may have exercised pendant jurisdiction with the plaintiff's constitutional claim in reviewing the statutory claim. In the case presently before us it is clear that the plaintiff has not asserted any substantial constitutional claim in addition to his statutory claim. It is also clear that the Secretary appointed pursuant to the Older Americans Act of 1965 has not yet made any decision concerning the Pennsylvania State Plan, and that the plaintiff is seeking to enjoin any such action until the organization of the plan "complies" with stated federal regulations.

Furthermore, we note that this case does not fall within the line of cases concerning the interpretation of a federal statutory provision or its related regulations and the conformity of the application of a state statute in relation to such interpretation whereby this court could maintain jurisdiction. *See, e. g., Paac v. Rizzo et al.*, 363 F.Supp. 503 (E.D. Pa.1973); *Alcala v. Burns*, 362 F.Supp. 180 (S.D.Iowa 1973). The meaning and construction of the Older Americans Act of 1965 is clear, and the case at hand entails solely a question as to whether we should decide if the proposed State Plan complies with the criteria established for such plans by the federal government.

We conclude that it is not within the province of this court to review or pass judgment on the acceptability of a particular state plan governing local matters and involving planning judgments, even if such plans are subject to criteria provided in federal statutes. That responsibility lies with the Legislature as the main guardian of the public needs. A cause of action arises and is stated before the court only upon actual administrative agency action pursuant to statutory authority wherein "federal rights" are infringed, whether it be the exercise of the power of eminent domain or the federal approval of a state plan and distribution of federal funds. At that time an aggrieved person has a right to sue in district court founded directly upon a federal law within the meaning of the language in § 1983 of the Civil Rights statute and the jurisdictional section 1343(4), and the district court is clearly empowered to review the agency's adherence to its own procedural requirements and criteria for eligibility for federal assistance in approving state plans submitted thereunder. *Shannon v. Dept. of Housing & Urban Dev.*, 436 F.2d 809, 818–19 (3d Cir. 1970).

An appropriate order will be entered.