■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ROBERT WILLIAM JOYCE and LAWRENCE YOUNG, Appellants.— Appeal by defendants from two judgments (one as to each defendant) of the County Court, Orange County, both rendered May 9, 1972, convicting them of burglary in the second degree and grand larceny in the third degree, upon a jury verdict, and imposing sentence. Judgments affirmed. Defendants admittedly were drug addicts on November 5, 1971 when the above-mentioned crimes were committed. Both had police records involving drug-related crimes. They admittedly committed the crimes resulting in the judgments under review. Their sole defense was the affirmative defense of entrapment (Penal Law, § 35.40 [eff. Sept. 1, 1967, renumbered § 40.05 in March, 1968]). The prosecution's principal witness, both before the Grand Jury and at the trial, was an undercover police officer employed by the City of Newburgh. On the date of the crimes, and prior thereto, he was engaged in undercover police activity to ferret out criminal drug activity in that city. In the course of his undercover activity, he became friendly with defendants. He knew them to be addicts. To further his undercover activity, he led them to believe he was drug oriented and would resort to unlawful conduct to obtain drugs. According to his testimony, when he met with defendants on the evening of November 5, 1971 in Newburgh, they told him they contemplated burglarizing a house that night in order to obtain money for "dope". They sought to enlist his aid in that contemplated burglary since they did not have an automobile and he had a car and could drive them to a house which they could "rip off". Defendants said they would share the drugs to be purchased with the burglary proceeds. According to this officer, he sought to dissuade defendants from committing that crime, but was unsuccessful. He tried to contact his superior officers, but could not. Then, to conceal his identity as an undercover police officer, he drove them, under their direction, to New-

burgh's suburbs, more particularly the Balmville section, to pick out a house to burglarize. They picked out a dwelling house for that purpose. He stopped the car and defendants alighted and went to the house. They rang the house bell and, after satisfying themselves that no one was at home, they broke in. They took a television set and other articles from the house, including a metal box containing personal papers of the owner and a jewelry box containing "shell-type" jewelry. While the burglary was progressing, the officer remained in his car outside the burglarized premises, awaiting defendants' return. Defendants returned to the car after completing the burglary. The officer aided them in putting the stolen property into the car trunk. Then he drove them to persons who purchased most of the stolen property. He claims that after the property was thus disposed of and shortly after midnight of that day he called his superior officer and reported to him what had occurred. The following morning he delivered to his superior the metal box containing the owner's personal papers. The box had been thrown away by defendants after the burglary, but was retrieved that morning by the officer. He also thus delivered the jewelry box and its contents, which had been left in his car. He did not arrest defendants, but testified before the Grand Jury concerning the crimes. He was asked by the Grand Jury whether he had received any of the proceeds thereof. In denying that he received any, he said that defendants had promised to share the drugs thus purchased with him, but did not do so. According to defendants, the officer entrapped them into committing the burglary by suggestion and persuasion. Further, they claimed he had participated in the enjoyment of the fruits of the burglary and that after the drugs were purchased with the proceeds of the crime he joined them in a drug party at a girl's house. The trial court submitted the issue raised by the entrapment defense to the jury on a charge to which no exception was taken. It charged the jury essentially in the language of the entrapment defense statute, to wit: if the jury found the officer "induced or encouraged [defendants to commit the burglary and they were] not otherwise disposed to commit [it]", then the jury might find that defendants established their entrapment defense and could be found not guilty by reason thereof; and further, in deciding that issue, that the officer's conduct in affording defendants "an opportunity to commit [a crime]", together with his participation therein, did not, in itself, constitute entrapment (Penal Law, § 40.05). There is evidence in the record (apparently believed by the jury) that defendants were predisposed to commit, and had initiated, the burglary and that the officer did not induce them to commit the crime. In the light thereof and upon defendants' trial admission that they had committed the crimes, we conclude that the jury's finding that defendants had not been entrapped into committing the crimes should not be disturbed and, thus, that the judgment of conviction should be affirmed. We note that "entrapment" was not a defense to a criminal prosecution in this State until our Penal Law was revised, effective September 1, 1967. To quote the practice commentary by Messrs. Denzer and McQuillan on former section 35.40 of the Penal Law (now § 40.05) (in McKinney's Cons. Laws of N. Y., Book 39, Penal Law, § 35.40, p. 84), that defense "is new, since New York did not previously recognize the defense of entrapment," and is "based upon the federal standards as enunciated" in *Sorrels* v. *United States* (287 U. S. 435) and *Sherman* v. *United States* (356 U. S. 369) and "Thus, the main thrust of the section is against pressure methods which may cause the commission of an offense by one who is not ordinarily disposed to commit it." Aside from the fact that no exception was taken by defendants to the trial court's charge that the participation by the undercover officer in the crimes did not constitute entrapment if defendants were predisposed to commit the

crimes, we note the recent decisions in *United States* v. *Russell* (411 U. S. 423) and *United States* v. *Lue* (498 F. 2d 531, cert. den. 43 U. S. Law Week 3303) are to the same effect as the trial court's charge. But in every case involving a judgment of conviction based on the testimony of an undercover police officer, the court has "the duty of scrutinizing closely the conduct of the government agents" to ascertain whether their actions are a "proper use of government power" (*Accardi* v. *United States*, 257 F. 2d 168, 172, 173). This affirmance is not to be construed as an approval of the officer's conduct in permitting the burglary to proceed. Martuscello, Acting P. J., Latham, Cohalan, Brennan and Munder, JJ., concur.