Michael DeMARIA and Frank
Bachetti, Petitioners,

v.

Robert JONES, Special Agent of the Drug Enforcement Administration, Individually and in his official capacity, et al., Respondents.

No. 76 Civ. 1297 (CHT).

United States District Court,
S. D. New York.

May 3, 1976.

Frederick H. Cohn, New York City, for plaintiffs.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for the Federal defendants in their official capacities; Richard J. McCarthy, Asst. U. S. Atty., New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for State defendants; Rhonda Amkraut Bayer, Deputy Asst. Atty. Gen., of counsel.

MEMORANDUM

TENNEY, District Judge.

Petitioners moved before this Court, by order to show cause, for injunctive relief pursuant to Fed.R.Civ.P. 65(a) and for money damages. Jurisdiction was predicated upon 28 U.S.C. §§ 1331, 1343 and 2201, invoking the Court's authority to hear issues raised under 42 U.S.C. §§ 1981, 1983, and the Fifth and Fourteenth Amendments to the United States Constitution. Respondents have moved to dismiss the complaint according to Rule 12(b)(6). For the reasons set forth below, plaintiffs' motion is denied, and defendants' motion is granted in all respects.

Petitioners are two individuals currently charged by New York State with violating its drug laws and facing prosecution in state supreme court, *People of the State of New York v. Frank Bachetti and Michael DeMaria*, No. N1394–558/1974. Respondents in this action include Robert Jones, a special agent of the Drug Enforcement Administration (hereinafter "DEA"), a federal agency within the United States Department of Justice; David Ben Israel, an individual alleged to be an informant of the DEA; Peter B. Bensinger, Administrator of the Drug Enforcement Administration; John W. Fallon, New York Regional Director of the Drug Enforcement Administration; Robert B. Fiske, Jr., United States Attorney for the Southern District of New York; James E. Nesland, Assistant United States Attorney; and Sterling Johnson, Special Prosecutor for drug offenses in the City of New York.

The complaint depicts a story suitable for an "X" rated cinema, charging first that respondents Jones and Israel violated petitioners' rights by entrapping them into criminal drug transactions by means of an elaborate scheme whereby Israel "held himself out to be a physician and wormed his way into the confidence of the entire DeMaria family, even treating female members of that family gynecologically." (Complaint ¶ XIV).

The second part of the complaint charges that agent Jones and Israel conspired with

the other respondents to coerce petitioners to cooperate with further DEA investigations by entrapping others in illegal narcotics transactions. Specifically, the complaint charges that:

"XIX. On September 17, 1974, after the arrest of each Petitioner, they were each taken to Drug Enforcement Administration headquarters in New York City. While there, separately Respondent JONES threatened each of them that unless he cooperated in inducing other persons to sell drugs to agents, JONES would turn his case over to the State authorities, thereby subjecting Petitioners to an increase in punishment from a sentence of up to 15 years at the discretion of a Federal Judge, to a mandatory sentence of life with a minimum of 15 years in prison in a State Proceeding.

"XX. On information and belief, the threats which were ultimately carried out, were made with the full knowledge of Respondents PETER B. BENSINGER, Administrator of the Drug Enforcement Administration, JOHN W. FALLON, New York Regional Director of the Drug Enforcement Administration; ROBERT FISK [sic], United States Attorney, JAMES E. NESLAND, Asst. United States Attorney; and STERLING JOHNSON, Special Prosecutor for drug offenses in New York City, who have made it a matter of policy to make and enforce the threats referred to as a matter of course among persons accused of dealing small amounts of drugs who are apprehended by Federal Authorities."

Basically, petitioners present a two-pronged complaint. The first claim concerns unconstitutional entrapment. The second charges a conspiracy among DEA agents, the United States Attorney's office and the Special Prosecutor for drug offenses in the City of New York, consisting of carefully calculated practices aimed at coercing the cooperation of arrestees in other drug investigations. The illegal practice allegedly proceeds as follows:

"XXI. Each and all of the Respondents have conspired with each other and with others unknown to use the color of laws of New York State to deprive the Petitioners of their constitutional rights to due process and equal protection of the laws by sanctioning and participating in the use of threats of increased penalties to coerce the Petitioners and others in their position to engage in activities patently illegal and highly immoral.

"XXII. As part of this scheme or plan, it is necessary to make good on the threats to increase the penalty on recalcitrants in order to instill fear in other persons in a like situation to that of the Petitioner." (Complaint).

In sum, the complaint asks that this Court enjoin defendant Jones from testifying against DeMaria and Bachetti in the state court prosecution, and seeks a declaration that the actions of the respondents jointly and severally violate federal law.

### I. Petitioners' Motion for Injunctive and Declaratory Relief

Because a state court prosecution is pending against petitioners, their request that the key prosecution witness, DEA agent Jones, be enjoined from testifying in that trial would seem to fly directly in the face of the prohibition against federal court interference in state proceedings. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482, *rehearing denied*, 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975); *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Even though petitioners do not ask for direct interference with the state court proceeding, the "practical impact" of enjoining Jones' testimony would be to dismantle the entire prosecution in that court. *See Samuels v. Mackell, supra*, 401 U.S. at 73, 91 S.Ct. at 768, 27 L.Ed.2d at 693; *Martin v. Merola*, 532 F.2d 191 at 194–95 (2d Cir., 1976) (per curiam). This principle of noninterference with state court proceedings is firmly entrenched in established concepts of "federalism" and "comity". *Younger v. Harris, supra*, 401 U.S. at 43–44, 91 S.Ct. at 750, 27 L.Ed.2d at 675; *Fried v. New York State Court of Appeals*, 76 Civ.

1212 (S.D.N.Y. March 23, 1976), on the understanding that the federal court is admonished to respect the integrity of a State's administration of its own laws. Petitioners do not challenge the validity of the state drug laws or their application, but rather the circumstance of presenting their defense in state court rather than in federal court.[1]

Recently, the Supreme Court has explained that

"In the absence of exceptional circumstances creating a threat of irreparable injury 'both great and immediate,' a federal court must not intervene by way of either injunction or declaratory judgment in a pending state criminal prosecution.

. . . . .

"Only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process." *Kugler v. Helfant*, 421 U.S. 117, 123–24, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15, 24 (1975).

There is no basis for finding that petitioners will not be able to receive a fair trial in the state proceeding. They may properly raise their enumerated objections in their defense before the state court.[2] The Supreme Court has explained that

"quite apart from appellee's right to appeal had it remained in state court, we conclude that it should not be permitted the luxury of federal litigation of issues presented by ongoing state proceedings, a luxury which, as we have already explained, is quite costly in terms of the interests which *Younger* seeks to protect.

"Appellee's argument, that because there may be no civil counterpart to federal habeas it should have contemporaneous access to a federal forum for its federal claim, apparently depends on the unarticulated major premise that every litigant who asserts a federal claim is entitled to have it decided on the merits by a federal, rather than a state, court. We need not consider the validity of this premise in order to reject the result which appellee seeks. Even assuming, *arguendo*, that litigants are entitled to a federal forum for the resolution of all federal issues, that entitlement is most appropriately asserted by a state litigant when he seeks to *relitigate* a federal issue adversely determined in *completed* state court proceedings. We do not understand why the federal forum must be available prior to completion of the state proceedings in which the federal issue arises, and the considerations canvassed in *Younger* militate against such a result." *Huffman v. Pursue, Ltd., supra*, 420 U.S. at 605–06, 95 S.Ct. at 1209, 43 L.Ed.2d at 493. (Footnote omitted).

■ In fact, the constitutionality of commencing a state court prosecution after the federal court complaint has been dismissed has already been raised before the state trial judge in a pre-trial motion which was denied. (Decision of *J.* Coon, dated

1. The Supreme Court has addressed the issue of indirect interference in state court proceedings, explaining as follows:

 ". . . [E]ven where the prayer for injunctive relief does not seek to enjoin the state criminal proceedings themselves, we have held that the principles of equity nonetheless militate heavily against the grant of an injunction except in the most extraordinary circumstances. In *O'Shea v. Littleton, supra*, 414 U.S. 488, at 502, [94 S.Ct. 669, at 679, 38 L.Ed.2d 674], we held that 'a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized in the deci-

sions previously noted.' And the same principles of federalism may prevent the injunction by a federal court of a state civil proceeding once begun. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, [95 S.Ct. 1200, 43 L.Ed.2d 482] (1975)." *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561, 44 U.S.L.W. 4095, 4100 (1976).

2. Because New York State expressly recognizes entrapment as an affirmative defense to be raised and factually proven at trial, N.Y. Penal Law § 40.05, this Court need not decide whether the scheme alleged in the complaint might amount to a constitutional violation. *See United States v. Russell*, 411 U.S. 423, 430, 93 S.Ct. 1637, 1642, 36 L.Ed.2d 366, 372 (1973).

Nov. 25, 1975). It would be both impolitic and improper for a federal court to review the state trial judge's order in a pending case prior to state appellate review. *Gold v. Connecticut*, 531 F.2d 91 (2d Cir., 1976).[3] *See Wilson v. Schnettler*, 365 U.S. 381, 384–85, 81 S.Ct. 632, 634–635, 5 L.Ed.2d 620, 623–624 (1961) and *Dombrowski v. Pfister*, 380 U.S. 479, 485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22, 27 (1965).[4]

Petitioners rely almost entirely upon *Rea v. United States*, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956) to support their contention that injunctive relief is proper under the present circumstances, as well as to support the merits of their Section 1983 claim. In light of the great moment accorded this case by petitioners, a brief summary of the holding is warranted. The *Rea* plaintiffs were indicted in federal court on the basis of evidence obtained in violation of the search and seizure provisions of Fed. R.Crim.P. 41(c).[5] After dismissal of the federal action, a state prosecution was commenced on the basis of the illegally obtained evidence. Invoking its "supervisory powers over federal law enforcement agencies," *id.* 350 U.S. at 217, 76 S.Ct. at 294, 100 L.Ed. at 236, the Supreme Court held that the federal agent who obtained the evidence unlawfully should be enjoined from transferring such evidence to state authorities, and from giving testimony concerning that evidence in the state proceedings. *Rea* essentially represents a policy decision by the Court, and is limited in applicability to situations involving violations of the enumerated Federal Rules of Criminal Procedure or clear transgressions of Constitutional guarantees. The Court explained that its decision was not based upon constitutional imperatives, but as follows:

"[W]e have then a case that raises not a constitutional question but one concerning our supervisory powers over federal law enforcement agencies. . . .

"A federal agent has violated the federal Rules governing searches and seizures—Rules prescribed by this Court and made effective after submission to the

3. The Second Circuit acknowledged an exception to this general principle, explaining as follows:

"Under certain circumstances, however, federal review may be available where such orders affect First Amendment rights not capable of vindication through direct appeal from conviction. See *Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860, 43 L.Ed.2d 54, 61 (1975). Such review would be proper, however, only where it is clear that there are no state court remedies available to resolve the First Amendment questions. See *Wallace v. Kern*, 520 F.2d 400, 406–07 (2 Cir. 1975)." *Id.*, 531 F.2d at 92.

*Cf. Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

4. It is unnecessary for this Court to determine whether an improper or malicious motive for swearing to a complaint which institutes a state court action may amount to such extraordinary circumstances that would justify federal interference in a state proceeding, because it is clear that petitioners' Fourteenth Amendment claims may be adequately vindicated in the state court proceeding. The Supreme Court noted, by way of dictum, in *Dombrowski v. Pfister, supra*, that "[i]t is difficult to think of a case in which an accused could properly bring a state prosecution to a halt while a federal court decides his claim that certain evidence is rendered inadmissible by the Fourteenth

Amendment." 380 U.S. at 485 n. 3, 85 S.Ct. at 1120, 14 L.Ed.2d at 27. This Court's noninvolvement is further supported by the recent Supreme Court holding that allegations of police misconduct would not support injunctive or monetary relief in a § 1983 action, *Rizzo v. Goode, supra*, 423 U.S. at 377, 96 S.Ct. at 607, 46 L.Ed.2d at 573, 44 U.S.L.W. at 4100, absent a showing of a deliberate and pervasive pattern of conduct designed specifically to deprive individuals of their First Amendment rights. *Id.* 423 U.S. at 373, 96 S.Ct. at 605, 46 L.Ed.2d at 571, 44 U.S.L.W. at 4099; *cf. Allee v. Medrano*, 416 U.S. 802, 814–15, 94 S.Ct. 2191, 2199–2200, 40 L.Ed.2d 566, 579–580 (1974); *Hague v. CIO*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

5. Rule 41(c) provides, in pertinent part, that "[a] warrant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant. . . . [The warrant] shall state the grounds or probable cause for its issuance and the names of the persons whose affidavits have been taken in support thereof." The warrant in *Rea* was defective on its face in that it did not demonstrate probable cause, and was based on unsworn statements. *Rea v. United States, supra*, 350 U.S. at 214–15, 76 S.Ct. at 293, 100 L.Ed. at 235.

Congress. The power of the federal courts extends to policing those requirements and making certain that they are observed . . .

". . . to enjoin the federal agent from testifying is merely to enforce the federal Rules against those owing obedience to them.

"The command of the federal Rules is in no way affected by anything that happens in a state court. They are designed as standards for federal agents. The fact that their violation may be condoned by state practice has no relevancy to our problem. Federal courts sit to enforce federal law; and federal law extends to the process issuing from those courts. The obligation of the federal agent is to obey the Rules. They are drawn for innocent and guilty alike. They prescribe standards for law enforcement. They are designed to protect the privacy of the citizen unless the strict standards set for searches and seizures are satisfied. That policy is defeated if the federal agent can flout them and use the fruits of his unlawful act either in federal or state proceedings." *Id.* at 216–18, 76 S.Ct. at 294, 100 L.Ed. at 236. (citations omitted).

There is no need to judge the current viability of the *Rea* decision,[6] because it is by its own terms inapposite to the present facts.

■ The complaint and supporting memoranda in this case at best depict an *at-*tempted* violation of Rules 11 and 48(a),[7] Fed.R.Crim.P. Certainly *Rea* does not authorize the radical measure of federal interference with state proceedings where federal agents actually violated no federal Rules, even though it may have been their intent do do so. Such an attenuated and indirect basis for deviating from the important federal policy of judicial restraint is impermissible. The Supreme Court has enunciated the danger in such a position, as follows:

"If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution.

"Mr. Justice Holmes dealt with this problem in a situation especially appeal-

---

**6.** *Rea* was decided by a divided Court (five to four) prior to the Supreme Court decision in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which first authorized a defendant to raise objections based upon the denial of federal constitutional rights in his state court trial, reviewable initially by state appellate procedures. "To permit such claims to be litigated collaterally . . . would in effect frustrate the deep-seated federal policy against piecemeal review." *Cleary v. Bolger*, 371 U.S. 392, 401, 83 S.Ct. 385, 390, 9 L.Ed.2d 390, 396 (1963); *cf. Pugach v. Dollinger*, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961); *Wilson v. Schnettler, supra*, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620; *United States v. Navarro*, 429 F.2d 928 (5th Cir. 1970).

**7.** In pertinent part, Rule 11 states:

"(d) *Insuring That the Plea Is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney."

Rule 48 directs as follows:

"(a) *By Attorney for Government.* The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate, such a dismissal may not be filed during the trial without the consent of the defendant."

ing: 'The relation of the United States and the Courts of the United States to the States and the Courts of the States is a very delicate matter that has occupied the thoughts of statesmen and judges for a hundred years and can not be disposed of by a summary statement that justice requires me to cut red tape and to intervene.' Memorandum of Mr. Justice Holmes in 5 The Sacco-Vanzetti Case, Transcript of the Record (Henry Holt & Co., 1929) 5516." *Stefanelli v. Minard,* 342 U.S. 117, 123–25, 72 S.Ct. 118, 121, 96 L.Ed. 138, 143 (1952) (footnotes omitted), *reiterated in Wilson v. Schnettler, supra,* 365 U.S. at 385–86, 81 S.Ct. at 635, 5 L.Ed.2d at 624–625.

■ This Court's decision not to interfere with the pending state proceedings does not leave petitioners without recourse to assert their objections. The objections may be raised at various stages in state and federal proceedings, including defense at trial, review or direct appeal, or post-conviction collateral and habeas corpus review. In addition, petitioners may attempt to impeach agent Jones' testimony at trial by revealing the allegedly coercive measures he employed.[8]

■ Finally, if petitioners' claims are well-founded, they may be ultimately vindicated against agents acting under color of state authority in a Section 1983 action, and possibly against federal agents in a civil action analogous to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[9]

For these reasons, the Court finds that petitioners' complaint will not support federal injunctive or declaratory relief.

**8.** The Appellate Division of the New York State Supreme Court recently held that in every case involving a judgment of conviction based upon an undercover agent's testimony, the court has the duty of scrutinizing the conduct of the agents involved in order to ascertain whether their actions constituted a proper use of government power. *People v. Joyce,* 47 A.D.2d 562, 363 N.Y.S.2d 634 (2d Dep't 1975).

**II. *Respondents' Motion to Dismiss***

For purposes of deciding a motion brought under Rule 12(b)(6), Fed.R.Civ.P., the well-pleaded allegations of the complaint are taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, 84 (1957); *Weisman v. LeLandis,* 532 F.2d 308 (2d Cir., 1976); *Fine v. City of New York,* 529 F.2d 70 (2d Cir., 1975). Even viewing the complaint in this manner, the Court finds that it does not state a claim upon which relief requested can be granted.

■ First of all, the entrapment allegations discussed above, present precisely the sort of defense contemplated by N.Y. Penal Law § 40.05. Until completion of the state prosecution when petitioners have the opportunity to factually establish entrapment, this Court is simply unable to determine whether there was any actionable breach of petitioners' constitutional rights under Section 1983 (if under color of state authority) or under a theory in the nature of *Bivens v. Six Unknown Named Agents, supra,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619. It should be noted that *Bivens* involved recovery for Fourth Amendment violations by federal agents, and whether a *Bivens* cause of action for damages applies to violations of Fifth Amendment rights is currently an open question which the Second Circuit has expressly declined to rule on. *Weise v. Syracuse University,* 522 F.2d 397, 404 (2d Cir. 1975); *N. Y. Pathological and X-Ray Laboratories, Inc. v. Immigration and Naturalization Service,* 523 F.2d 79, 82 n. 5 (2d Cir., 1975); *Wahba v. New York University,* 492 F.2d 96, 103–104 (2d Cir.), *cert. denied,*

**9.** *Bivens* held that a petitioner was entitled to money damages for injuries resulting from violations of the Fourth Amendment by persons acting under color of *federal* law. Federal jurisdiction in the case was predicated upon 28 U.S.C. § 1331 and alleged Fourth Amendment violations.

419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974).

 Even if such claims were viable, "more than the mere speculation of damages" must be shown to demonstrate "that plaintiffs have in fact been denied their due process rights." *Martin v. Merola, supra,* 532 F.2d 191 at 194 (2d Cir., 1976), *citing Rosenberg v. Martin,* 478 F.2d 520, 525 (2d Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973). Absent a clear showing of outrageous and shockingly unconstitutional practices like those revealed in *United States v. Toscanino,* 500 F.2d 267 (2d Cir., 1974),[10] this Court must conclude that it would be premature to rule on the factual issue of entrapment before the fact-finding body considers this defense at the state court trial. At this point, petitioners do not raise a claim upon which relief can be granted.

 With respect to coercive practices by respondents, petitioners similarly fail to state a claim for relief. Petitioners conceded that they did not succumb to the coercive pressures in this case, hence they have no standing to raise a claim on behalf of others who have been coerced by these practices (Supp. Affid. of Herman Graber). In sum, the claim of attempted coercion is not a case or controversy that may be adjudicated by a federal court. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561, 44 U.S.L.W. 4095 (1976); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Petitioners allege no injury which would allow a federal court to assume jurisdiction under Article III of the Constitution. *O'Shea v. Littleton, supra,* 414 U.S. at 493, 94 S.Ct. at 674, 38 L.Ed.2d at 681.

After their arrest, petitioners refused to cooperate with federal agents in further drug investigations. As a result, the federal complaint was dropped, and proceedings against the two were commenced in state court, as had allegedly been threatened. The petitioners contend that their prosecution should have been maintained under federal court jurisdiction, but they allege no basis for demanding the choice of the forum for their prosecution. It is well settled that

"[w]hen a state court and a court of the United States may each take jurisdiction of a matter, the tribunal where jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed and the jurisdiction involved is exhausted . . . ." *Harkrader v. Wadley,* 172 U.S. 148, 164, 19 S.Ct. 119, 125, 43 L.Ed. 399, 404 (1898), *quoted in Wilson v. Schnettler, supra,* 365 U.S. at 384 n. 3, 81 S.Ct. at 635, 5 L.Ed.2d at 624.

In refusing to enjoin the introduction in a state court prosecution of evidence illegally obtained by federal agents, and their testimony respecting it, the Supreme Court expounded upon the underlying principle as follows:

"We live in the jurisdiction of two sovereignties. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them. Such rules have been adopted. One of them is that an accused 'should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial.' *Ponzi v. Fessenden,* 258 U.S. 254, 260 [42 S.Ct. 309, 310, 66 L.Ed. 607]. Another is that federal courts should not exercise their discre-

---

**10.** *Toscanino* held that the criminal process of the federal courts would be abused and debased if it permitted the prosecution of a foreign citizen who was illegally and forcibly abducted by agents of the United States, implicated by means of unauthorized electronic surveillance and, finally, indicted and held for trial in the Eastern District of New York. The court explained that "when an accused is kidnapped and forcibly brought within the jurisdiction, the court's acquisition of power over his person represents the fruits of the government's exploitation of its own misconduct." 500 F.2d at 275.

In contrast, DeMaria and Bachetti were lawfully present within the jurisdiction of New York authorities.

tionary power 'to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent . . . .' *Douglas v. City of Jeannette, supra* [319 U.S. 157] at 163 [63 S.Ct. 877, at 881, 87 L.Ed. 1324]." *Wilson v. Schnettler, supra*, 365 U.S. at 385, 81 S.Ct. at 635, 5 L.Ed.2d at 624.

■ Petitioners apparently assume that prosecution under a state statute with penalties which differ from those in the analogous federal statutes states a claim of violation of a constitutional right. To the contrary, where a single act violates more than one statute, the Government may elect to prosecute under either. *United States v. Gilliland*, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1940). If the same acts violate two or more statutes, the defendant cannot complain because he or she has been prosecuted under the statute which imposes a harsher potential penalty. *United States v. Eisenmann*, 396 F.2d 565, 568 (2d Cir., 1968); *Black v. United States*, 405 F.2d 187 (5th Cir., 1968).

■ A defendant does not have a constitutional right to be prosecuted under a federal statute when both federal and local statutes are identical but the former imposes a less severe penalty. *Hutcherson v. United States*, 120 U.S.App.D.C. 274, 345 F.2d 964, 967, *cert. denied*, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965). Nor does a defendant have a constitutional right not to be prosecuted for the same acts by both the United States and a state if the laws of both have been violated. *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Bartkus v. People of State of Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Due process does not confer this choice of prosecution upon an arrestee. *See Chunn v. Clark*, 451 F.2d 1005, 1006 (5th Cir., 1971); *Morton v. United States*, 351 F.2d 457, 458 (10th Cir., 1965). Nor

does he have standing to challenge the selection of the prosecuting sovereignty. *Derengowski v. United States Marshal*, 377 F.2d 223 (8th Cir., 1967).

■ Petitioners contend that the choice was nevertheless presented to them for coercive leverage, and that they are therefore unjustly burdened now by having to defend the action in the state court, where potential penalties are harsher than in federal court. Since the complaint admits the facial validity and probable cause for the arrest and institution of state proceedings (reserving an affirmative defense of entrapment), this Court cannot find any support for the assertion that the defense would be unfairly more onerous a task in state court than in federal court. The ability to obtain a fair trial and present an adequate defense should not be tied to the possible penalty. The substantive defense of entrapment would presumably be raised in either a state or federal prosecution, and as vigorously prosecuted there.[11] In fact, many courtroom observers believe that a state court jury would be less willing than a federal jury to convict a defendant, precisely because of the severity of the consequent penalty.

Petitioners' claim is really that coercive pressure was exerted, and that therefore they *could* have been coerced but, in fact, were not coerced. Again reliance is placed upon the *Rea* decision to support the merits underlying this claim. The facts and holding of that decision have been discussed earlier, and the Court need only point out its distinctions with the present case. Whereas *Rea* concerned a prosecution predicated upon an unlawful arrest, the arrest in this case was legitimately effected. *Rea* revealed clear-cut violations of specifically prescribed rules of conduct by federal agents. Permitting them to testify would flout the purposes and policies of the federal rules—in effect legitimizing conduct specifically outlawed by Congress. *Rea* also involved a previous federal court ruling dis-

---

11. Petitioners' stalwart resistance to the attempted coercion and their refusal to cooperate in other drug investigations, moreover, seems

to indicate the existence of a meritorious defense to the charges against them.

missing the indictment on the basis of the illegally obtained evidence. DeMaria and Bachetti do not claim any Fourth Amendment violation in the seizure of the incriminating contraband.

■ Finally, in *Rea*, the illegal police conduct served as the foundation for the petitioner's arrest and criminal prosecution. The alleged unlawful conduct in this case cannot be pegged to an express prohibition of the federal rules, nor is there any claim that the alleged misconduct vitiates the arrest and indictment. In fact, the state court indictment is facially proper, and the coercive conduct complained of occurred subsequent to and apart from the underlying events leading to the arrests. The latter are the events agent Jones is to testify about, and there is no logical reason to bar evidence of untainted events because the participant attempted putative unlawful coercion at a later time, under separate and distinct circumstances.

■ Unlike *Rea*, where a federal court had previously dismissed the prosecution as invalid ab initio, a federal prosecution in this case would be proper, and is in fact exactly what petitioners concededly desire. Their objections to the state prosecution go not to the case against DeMaria and Bachetti, but to the methods of prosecutorial activity. Although these methods may be reproachable, unless petitioners can show some actual injury (*i. e.,* arrest invalid, evidence obtained improperly, plea coerced unlawfully), petitioners do not present a case or controversy suitable for judicial review. The Supreme Court has stated that the "injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton, supra,* 414 U.S. at 494, 94 S.Ct. at 675, 38 L.Ed.2d at 682, *quoting Golden v. Zwickler,* 394 U.S. 103, 109–10, 89 S.Ct. 956, 960, 22 L.Ed.2d 113, 118 (1969). In the absence of any claim that the state statute is unconstitutional on its face or in its application, or that unconstitutional procedures formed the basis of the prosecution under the state statute, plaintiffs have no claim of injury from the putative coercive tactics employed.

The proper party to raise an objection to this unlawful coercive process is one who can claim he was coerced. When he enters his plea in federal court, this defendant can explain the surrounding circumstances of undue coercion in violation of Fed.R.Crim.P. 11(d). Having suffered actual injury, the individual can attack his conviction collaterally seeking habeas corpus relief, or he can seek to maintain a private civil suit to vindicate his claim. Petitioners in this case are unable to show that they suffered injury from the attempted coercive tactics of the law enforcement officers and federal prosecutors, nor are they able to show that attempted coercion is a violation of any constitutional right. The Supreme Court recently disposed of a class action claiming a pattern of illegal and unconstitutional police misconduct, stating, in part, as follows:

"Going beyond considerations concerning the existence of a live controversy and threshold statutory liability, we must address an additional and novel claim advanced by respondent classes. They assert that given the citizenry's 'right' to be protected from unconstitutional exercises of police power and the 'need for protection from such abuses,' respondents have a right to mandatory equitable relief in some form when those in supervisory positions do not institute steps to reduce the incidence of unconstitutional police misconduct. The scope of federal equity power, it is proposed, should be extended to the fashioning of prophylactic procedures for a state agency designed to minimize this kind of misconduct on the part of a handful of its employees. . . .

". . . When a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with 'the well-established rule that the Government has traditionally been granted the widest latitude in the "dispatch of its own internal affairs," *Cafeteria Workers v. McElroy,* 367 U.S. 886, 896 [81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230] (1961),' quoted in *Sampson v. Murray,* 415 U.S. 61, 83 [94 S.Ct. 937, 950, 39 L.Ed.2d 166] (1974)." *Rizzo v.*

*Goode, supra,* 423 U.S. at 378, 96 S.Ct. at 607, 46 L.Ed.2d at 574, 44 U.S.L.W. at 4100 (footnote omitted).

For these reasons, this Court must conclude that petitioners fail to state a claim upon which any relief can be granted.

Accordingly, the Court concludes that petitioners fail to state a claim upon which any relief can be granted, and it need not consider the issue of immunity of prosecutors and federal agents for acts within the scope of their investigation and prosecution. We note, however, that the recent Supreme Court decision in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, 44 U.S.L.W. 4250 (1976) appears to abrogate the maintenance of a civil action against prosecutors, even for malicious conduct.[12]

That Court's decision in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 U.S.L.W. 4337 (1976) further limited the standards under which a civil damage action can be maintained for injury due to misconduct of law enforcement authorities.[13]

This Court concludes that petitioners are not entitled to pecuniary, injunctive or declaratory relief. Their complaint fails to state a valid claim for relief; and the action must be dismissed.

Accordingly, petitioners' motion is denied and respondents' motion to dismiss is hereby granted in all respects, without prejudice.

So ordered.

---

12. The Court's holding that

"in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983," *Imbler v. Pachtman, supra,* 424 U.S. at 431, 96 S.Ct. at 995, 47 L.Ed.2d at 144, 44 U.S. L.W. at 4257.

was reached after a functional analysis of respondent's activities. These were

"intimately associated with the judicial phase of the criminal process, and were functions to which the reasons for absolute immunity apply with full force." *Id.,* at 430, 96 S.Ct. at 995, 47 L.Ed.2d at 143, 44 U.S.L.W. at 4256–57.

The Court noted further:

"We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required, constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include question of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present. Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence. At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. Drawing a proper line between these functions may present difficult questions, but this case does not require us to anticipate them." *Id.,* at 431, 96 S.Ct. at 995, 47 L.Ed.2d at 144, 44 U.S.L.W at 4257 n. 33.

13. In *Paul v. Davis,* the Court held that an individual could not recover damages under 42 U.S.C. § 1983 for defamation by police officers. The reasoning was explained as follows:

"Respondent's construction would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment. We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result, and a study of our decisions convinces us they do not support the construction urged by respondent.

⁂

"[In contrast to *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961),] [r]espondent, however, has pointed to no specific constitutional guarantee safeguarding the interest he asserts has been invaded. Rather he apparently believes that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor. But such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States. We have noted the 'constitutional shoals' that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law. *Griffin v. Breckenridge,* 403 U.S. 88, 101–102 [91 S.Ct. 1790, 1797–1798, 29 L.Ed.2d 338, 347–48] (1971); *a fortiori* the procedural guarantees of the Due Process Clause cannot be the source for such law." 424 U.S. at 699, 96 S.Ct. at 1159, 47 L.Ed.2d at 412, 44 U.S.L.W. at 4339.